**STATE of Missouri ex rel. B_____ C_____ C_____, a juvenile, Plaintiff-Relator,**

v.

**The Honorable Frank CONLEY, Juvenile Court Judge, 13th Judicial Circuit, Defendant-Respondent.**

**No. KCD 30058.**

Missouri Court of Appeals, Kansas City District.

July 3, 1978.

---

Harry D. Boul, Columbia, for plaintiff-relator.

Lynn E. Umstead, Legal Counsel to Juvenile Court, 13th Judicial Circuit of Missouri, Columbia, for defendant-respondent.

Before WASSERSTROM, P. J., SWOFFORD, C. J., and SHANGLER, DIXON, PRITCHARD, SOMERVILLE and TURNAGE, JJ.

SOMERVILLE, Judge.

Respondent judge's refusal to honor relator's written application for change of judge in a juvenile proceeding prompted this court to issue its provisional rule in prohibition. This court's present obligation to either quash or make absolute its provisional rule in prohibition is responsible for eliciting the following procedural events antedating relator's application for change of judge.

On October 19, 1970, relator was found to be within the jurisdiction of the Juvenile Court of Boone County, Missouri, by reason that the "behavior, environment and associations of the juvenile were injurious to his welfare." Sec. 211.031(1)(c), RSMo 1969 (now Sec. 211.031, subd. 1(1)(c), RSMo Supp. 1976). Relator was made a ward of the court on the same date and remanded to the custody of his natural parents under the supervision of the juvenile officer pursuant to Sec. 211.181(1), RSMo 1969 (now Sec. 211.181(1), RSMo Supp.1974). Although relator was sent on several subsequent occasions to various agencies for evaluation, he was eventually released after each occasion to the custody of his natural mother under the supervision of the Juvenile Officer of Boone County. On November 1, 1977, the Deputy Juvenile Officer of Boone County filed a motion to modify the last order [1] involving disposition of relator on the ground that relator had since perpetrated certain specified felonies thereby calling for a different disposition, namely, commitment of relator to the custody of the division of youth services for confinement in the state training school for boys at Boonville, Missouri. On November 14, 1977, a future date was selected for hearing the deputy juvenile officer's motion to modify. On November 15, 1977, the controversial application for change of judge was filed by relator.

This court, when called upon to decide whether its provisional rule in prohibition should be quashed or made absolute, is immediately confronted with widely divergent points of view. In a broad sense, this diversity orbits around the timeliness or untimeliness of relator's application for change of judge. But in a narrow sense, it orbits around the deputy juvenile officer's motion to modify as being a "civil action" within the contemplation of Rule 51.05. Relator contends the matter presently pending before respondent judge is a "civil action" within the meaning and purview of Rule 51.05; therefore, his application for change of judge was timely filed and this court's provisional rule in prohibition should be made absolute. Respondent judge contends with equal vigor that disposition of the matter presently pending before him involves a continuing exercise of supervisory authority over relator pursuant to the order of October 1, 1970, finding relator to be within the jurisdiction of the Juvenile Court of Boone County, Missouri; therefore, relator's application for change of judge, filed some seven (7) years after October 1, 1970, was not timely filed and this court's provisional rule in prohibition should be quashed.

Rule 126.01, inter alia, provides as follows:

"A change of judge of the juvenile court shall be ordered:

.     .     .     .     .

2. Upon application of an interested party under Rule 51.05; . . . ."

Rule 51.05, so far as here relevant, provides as follows:

"(a) A change of judge shall be ordered in any civil action upon the filing of a written application therefor by any party or by his agent or attorney. The application need not allege or prove any cause for such change of judge and need not be verified.

(b) The application must be filed at least thirty days before the trial date or within five days after a trial setting date has been made, whichever date is later,

.     .     .     .

.     .     .     .     .

---

1. An order dated September 2, 1975, returning relator to the custody of his natural mother under the supervision of the Juvenile Officer of Boone County.

"(e) Upon the presentation of a timely application for change of judge, the judge shall promptly sustain the application . . . ."

It stands undisputed that relator's application for change of judge met with Rule 51.05's minimal requirements as to form,[2] and that it was filed within five (5) days after a "trial setting date" was ordered which is the "later" date within the meaning of Rule 51.05(b), supra. Stripped to bare essentials, the only remaining issue before this court is whether the deputy juvenile officer's motion to modify is a "civil action" within the contemplation of Rule 51.05. If it is, relator's application for change of judge was timely filed. If it is not, relator's application for change of judge was not timely filed.

*Hayes v. Hayes*, 363 Mo. 583, 252 S.W.2d 323 (1952), wherein a change of venue was sought to effect a change of judge in a proceeding to modify a divorce decree, and *State ex rel. Brault v. Kyser*, 562 S.W.2d 172 (Mo.App.1978), wherein a change of judge was sought in a proceeding to terminate parental rights under Sec. 211.441, RSMo 1969, exhaustively explored the meaning of "civil suit" in the context presently under consideration. Notwithstanding certain nuances due to the different type of proceedings involved, the ultimate holdings in *Hayes* and *Brault* emphasize that "civil action", a consistently used term, is not to be miserly construed when dealing with appropriate statutes and rules for effecting a change of judge. More particularly, *Hayes*, 363 Mo. 583, 252 S.W.2d at 327, teaches that something less than a "new suit" or an "original action" qualifies as a "civil action" and that the real test is whether it is the "kind of independent proceeding which does in fact adjudicate rights of individuals, irrespective of and not conditional upon what is provided in the original decree." *Brault*, 562 S.W.2d at 174, similarly teaches that any judicial proceeding which raises "a new issue" and which seeks

"distinctly different relief" from that which was previously before the court constitutes a "civil action" as the term is used in Rule 51.05, supra. The consummate test appears to be rooted in basic and fundamental concepts of right and fairness.

Speaking in broad generalities, the juvenile proceeding presently pending before respondent judge appears to meet all the requisites laid down in *Hayes* and *Brault* of a "civil action" falling within the intendment of Rule 51.05, supra. Speaking in more restrictive terms, the juvenile proceeding at hand possesses certain individual characteristics which even more convincingly demonstrate its status as a "civil action" within the prescription of Rule 51.05. Sec. 211.211, RSMo 1969, prohibits relator's commitment to the division of youth services for internment in the state training school for boys at Boonville absent being afforded "the opportunity to have and be represented by counsel *at a hearing held for that purpose*". (Emphasis added.) Once a juvenile is committed to and received by the division of youth services for internment in the state training school for boys at Boonville, the committing juvenile court loses jurisdiction over the juvenile unless jurisdiction is returned to it in an appropriate proceeding. Sec. 211.041, RSMo 1969; and *In re A_____ N_____*, 500 S.W.2d 284, 287–88 (Mo.App.1973). A disposition of juveniles under Sec. 211.181, RSMo Supp.1974, by way of committing them to the division of youth services is restricted to juveniles who have been adjudicated pursuant to the provisions of subdivision (2) of Sec. 211.031, RSMo Supp.1976, or who have been found to have behavior injurious to their welfare or to the welfare of others. Sec. 219.021, RSMo Supp.1975. These statutes bespeak of legislative recognition of the existence of vast differences between juvenile proceedings which seek the treatment and reformation of offending juveniles under the auspices of a benevolent juvenile judge in a paternalistic atmosphere vis-a-vis the treatment and reformation of offending juve-

**2.** The following "Committee Note" is appended to present Rule 51.05: "The following application would be sufficient: '(Caption) Plaintiff requests a change of judge. (Signature and address of attorney or party).'"

niles in an institutional atmosphere such as that of a state training school. The latter possesses far more serious implications and potential for impinging upon the basic liberties and freedoms of juveniles than does the former.

Hayes v. Hayes, supra, and State ex rel. Brault v. Kyser, supra, and the corroborative statutory provisions heretofore specifically mentioned, collectively viewed, strongly auger in favor of construing the juvenile proceeding pending before respondent judge as being a "civil action" for purposes of the application of Rule 51.05, supra. The only argument advanced by respondent judge in opposition to doing so is one ostensibly rooted in public policy. Essentially, he argues that an infinite panoply of intrinsic benefits arise from continued supervision of an offending juvenile by the same judge which far outweigh any deprivation of a juvenile's right to have a proceeding profoundly affecting his liberty and freedom adjudicated by a judge who is impartial both in fact as well as in the mind of the juvenile. Judicial determination of when a pending juvenile proceeding falls within the realm of a "civil action" as used in Rule 51.05, supra, should not be relegated solely to esoteric, theoretical considerations that the lofty, reformative and regenerative purposes of the Juvenile Code can only be achieved by jealously centering jurisdiction in a single judge for all purposes, even at the risk and expense of infringing upon certain basic rights otherwise recognized and afforded to adults. Notwithstanding its unique jurisdiction, a juvenile court remains first and foremost a court of justice. The term "civil action" as used in Rule 51.05, supra, is made applicable via Rule 126.01, supra, to juvenile courts because they are courts of justice, not because they are courts of limited jurisdiction. To deny juveniles the right to a change of judge on the flimsy theory that the continuity achieved by a single judge presiding over their welfare so overwhelmingly inures to their benefit that all other valid considerations should be excluded is a hollow argument which makes a mockery and a farce of the fundamental right to have matters affecting one's liberty and freedom adjudicated by an impartial judge. The narrow construction of "civil action" sought by respondent judge would defeat rather than achieve the avowed purpose of Rule 51.05, supra,—to give every party, juvenile and adult alike, a virtually unfettered right on one occasion to unilaterally disqualify a judge who is subjectively sensed to be partial, prejudiced or lacking in objectivity, as well as one who is demonstrably partial, prejudiced or lacking in objectivity. Affirmation of this right on behalf of juveniles leaves no choice but to construe the juvenile proceeding pending before respondent judge to be a "civil action" within the contemplation of Rule 51.05, supra. Perforce, relator's application for change of judge was timely filed.

This court's provisional rule in prohibition is made absolute and respondent judge is prohibited from taking any further action in the juvenile proceeding now pending before him involving relator except to enter an appropriate order disqualifying himself, and concurrently to take appropriate steps pursuant to Rule 51.05(e)(2) to obtain another judge.

·Provisional rule in prohibition made absolute.

All concur.