STATE of Missouri ex rel. David STICKELBER, d/b/a Hampton Place Apartments, and Hampton Place Apartments, Relator,

v.

The Honorable W. Stephen NIXON, Judge of the Circuit Court of Jackson County, Missouri, Div. 5, at Independence, Respondent.

No. WD 59548.

Missouri Court of Appeals, Western District.

Sept. 11, 2001.

Michael Shunk and Scott Long, Overland Park, KS, for Appellant.

Brian Niceswanger, Overland Park, KS, for Respondent.

HOLLIGER, Presiding Judge.

## PERMANENT ORDER
## IN PROHIBITION

The underlying case concerns a wrongful death action by the Plaintiff, Darcy Harris (hereinafter "Harris") against the Relator, David Stickelber d/b/a Hampton Place Apartments and Hampton Place Apartments (hereinafter "Stickelber"). The action was originally tried to a jury before Judge Moran in Jackson County. A verdict and judgment in favor of Stickelber issued in that matter, and Judge Moran granted Harris' motion for new trial on the basis of improperly excluded evidence. Stickelber timely appealed the grant of new trial. While the appeal was still pending, Judge Moran retired. In anticipation of that retirement, the Presiding Judge of Jackson County on June 16, 1999, issued an administrative order transferring cases among the various trial divisions. Included in that administrative order was a provision transferring all civil cases pending before Judge Moran (sitting in Div. 16) to Judge Nixon (sitting in Div. 5). The transfer was to be effective November 1, 1999, unless Judge Moran's replacement be appointed prior to November 1, in which case the transfer would occur upon the appointment of the new judge. This administrative order was published through The Daily Record, a local newspaper, on June 19, 1999, and periodically thereafter through December 6, 1999.

On November 19, 1999, Stickelber's counsel also received a notice by facsimile transmitted by the court administrator of the circuit court informing counsel of the transfer of this case. That notice stated: "Pursuant to Circuit Court Administrative Order, the above case has been transferred from Division 16 to Division 5. You are being notified as the attorney of record in this case."

Stickelber's counsel filed a motion for change of judge with the circuit court on December 6, 1999. This motion did not seek Judge Nixon's recusal for cause; instead it was premised upon the automatic disqualification provisions of Rule 51.05(a). Stickelber's motion was denied by Judge Nixon on December 15, 1999, on the grounds that the motion was untimely filed. Stickelber sought reconsideration by the trial court, but that request was denied on February 24, 2000. On January 25, 2001, Stickelber sought relief from this court, seeking the issuance of a writ of prohibition or, in the alternative, of mandamus. He contends that his motion for change of judge was timely filed, and that Rule 51.05 required Judge Nixon to immediately transfer the cause to the presiding judge for reassignment. During this time, the appeal of the underlying judgment was still pending in this court. An opinion was recently issued in the direct appeal on June 29, 2001, affirming the trial court's grant of new trial, but this Court's mandate has not yet issued. *See Harris v. Stickelber,* 55 S.W.3d 858 (2001).

Stickelber's writ petition seeks relief in the form of prohibition or, in the alternative, mandamus. To successfully seek prohibition or mandamus, the applicant must meet an exacting standard. To obtain a writ of prohibition, Stickelber must establish that the Respondent acted in excess of his jurisdiction, that action is necessary to prevent usurpation of judicial power, or that we must act to prevent an absolute and irreparable harm· to a party. *State ex rel. Dir. of Revenue v. Gaertner,* 32 S.W.3d 564, 566 (Mo. banc 2000). Prohibition is appropriate where a judge has improperly denied a timely filed motion for change of judge. *See generally, State ex rel. Walters v. Schaeperkoetter,* 22 S.W.3d 740 (Mo.App.2000). Similarly, to success-

fully petition for mandamus, the applicant must make an "unequivocal showing" that the Relator "failed to perform a ministerial duty" required by law. *Bergman v. Mills,* 988 S.W.2d 84, 88 (Mo.App.1999).

Here, Stickelber's writ petition is based upon his claim that Judge Nixon acted outside of his jurisdiction in denying his motion for change of judge pursuant to Rule 51.05. That claim is premised upon two grounds. First, Stickelber takes the position that the administrative order transferring the case from Judge Moran to Judge Nixon was void as the effective date of that transfer was less than six months from the date of the administrative order, in violation of Jackson County Circuit Court Local Rule 6.1. Second, Stickelber contends that his motion for change of judge was timely, because it was filed within 30 days of the date his counsel received actual notice of the transfer.

■ Stickelber's second point contends that his motion for change of judge was timely. He correctly states that a trial judge does not have jurisdiction to deny a motion for change of judge that is timely. *See State ex rel. Walters,* 22 S.W.3d at 743. *State ex rel. Cohen v. Riley,* 994 S.W.2d 546, 547 (Mo. banc 1999); *State ex rel. Kramer v. Walker,* 926 S.W.2d 72, 76 (Mo. App.1996); *State ex rel. Anderson v. Frawley,* 923 S.W.2d 960, 961 (Mo.App. 1996); *State ex rel. King v. Huesemann,* 776 S.W.2d 488, 491 (Mo.App.1989); *State ex rel. Raack v. Kohn,* 720 S.W.2d 941, 943 (Mo. banc 1986). Respondent, in turn, contends that Stickelber's motion was untimely because it was filed more than thirty days after the transfer to Judge Nixon became effective under the administrative order, that is, more than 30 days after November 1, 1999.

Rule 51.05, which authorizes a party to seek a change of judge provides, in salient part:

### 51.05. Change of Judge—Procedure

(a) A change of judge *shall* be ordered in any civil action upon the timely filing of a written application therefor by any party. For purposes of this Rule 51, motions to modify child custody, child support, or spousal maintenance filed pursuant to chapter 452, RSMo, shall not be deemed to be an independent civil action unless the judge designated to rule on the motion is not the same judge that ruled on the previous independent civil action. The application need not allege or prove any cause for such change of judge and need not be verified.

(b) The application must be filed within sixty days from service of process or thirty days from the designation of the trial judge, whichever time is longer. If the designation of the trial judge occurs less than thirty days before trial, the application must be filed prior to any appearance before the trial judge.

\* \* \*

(e) The judge promptly *shall sustain a timely application for change of judge* upon its presentation. The disqualified judge shall transfer the case to a judge stipulated to by the parties if the new judge agrees to take the case. If the case is not so transferred, the disqualified judge shall notify the presiding judge:

Rule 51.05 (emphasis added). The rule sets forth deadlines for timely filing a motion for change of judge where the motion is not for cause. The parties appear to agree that the applicable deadline here is that which requires that the motion for change of judge must be filed within thirty days of the designation of the trial judge. The parties also agree that if a motion for change of judge is timely filed, the trial

judge has no discretion to deny the motion. *See State ex rel. Walters,* 22 S.W.3d at 742.

 We need not resolve these claims that the administrative order was invalid or whether Stickelber timely filed his motion. We hold that because the underlying case was pending on appeal, respondent lacked jurisdiction to do anything in the case beyond ministerial or other authorized acts. As a general matter, upon filing of a notice of appeal, a trial court loses almost all jurisdiction over a case. *State ex rel. Steinmeyer v. Coburn,* 671 S.W.2d 366, 371 (Mo.App.1984). The remaining jurisdiction of a trial court is sharply constrained, with few exceptions. For example, a trial court retains the ability to exercise functions of a purely ministerial or executive nature. *Id.* Statutes or Supreme Court Rules also convey authority to take up particular motions or applications for relief. *Id.* at 371–72. Beyond such exceptions, the trial court is not permitted to exercise functions of a judicial character. *Id.* at 372. These latter functions are those which entail "the exercise of judgment and discretion whereas ministerial functions invoke no such discretion." *Id.* More precisely in the present context the issue is whether a new designation of a *trial judge* can occur for purposes of Rule 51.05 while a case is pending on appeal. We think not. In such situations, while an appeal is still pending, there is no "trial judge" designated for the case. Such a conclusion makes sense from the perspective that there is no trial pending or scheduled for a case on appeal. Indeed, from the trial court's perspective, the case has reached disposition. Only if the case is remanded might it become necessary for the case to be rescheduled for trial.

 This does not mean that a case cannot be transferred from one judge to another while an appeal is pending. A court, and particularly a multiple division circuit court, must have some mechanism to track cases for administrative purposes. The Banner case management system being implemented in Missouri's courts, for example, tracks cases by judge's names, not by divisions of a circuit court. Thus, every case must be "assigned" for tracking purposes to a sitting judge (or senior judge under special order). Obviously an application of the maxim that everybody (every case—on appeal or not) has to be somewhere, these case assignments are for administrative purposes as well as judicial purposes. They are also necessary so that a judge is assigned and available for performance of ministerial or other authorized functions regarding a case while it is on appeal. It is theoretically possible that multiple transfers of a case pending on appeal could take place as judges change docket assignments, retire, or leave office for other reasons, especially in large urban circuits such as Jackson County. Nevertheless, the trial judge having ministerial and administrative responsibilities of a case while it is pending on appeal does not have the power to exercise judicial functions regarding the case, including presiding over the trial of the case.

The issue before us is whether the time limit provided in Rule 51.05 can be considered to run against a party during a time in which the judge is not empowered to exercise any judicial function over the case. To hold that the time limit would run while an appeal was pending seems inappropriate. Such an approach would mean that a party could be required to exercise its challenge under Rule 51.05 even though that judge might never have jurisdiction over the case in the event of a remand from the appellate court. If a party obtained a change of judge, there would be no guarantee that the case might be reassigned to yet another judge before the appellate court issues its mandate. A

party whose case is on appeal should not have to wager his or her one chance to seek a change of judge as a matter of right upon the possibility that a judge might still be holding the case if the case is remanded on appeal. Put another way, it would be incongruous to consider the administrative order a designation of the trial judge under Rule 51.05 when it had not yet been determined by the appellate court whether any trial or further judicial proceeding will be necessary. And it would be inconsistent with the principle long expressed favoring liberal construction of the disqualification provisions in favor of the right to disqualify. *State ex rel. Campbell v. Kohn,* 606 S.W.2d 399, 401 (Mo.App.1980). *See also State ex rel. Raack,* 720 S.W.2d at 943.

To hold that a circuit court reassignment of a case while on appeal is not an operative designation of a trial judge within the meaning of Rule 51.05 is also not inconsistent with those decisions that hold that after remand from an appellate court a party may no longer seek an automatic disqualification of a judge assigned to the case upon remand who also presided over the original trial, even if the motion for change of judge is filed within thirty days of the mandate. *See Anderson v. Anderson,* 861 S.W.2d 796 (Mo.App. S.D. 1993) (questioning the continuing applicability of *Hough v. Hough,* 819 S.W.2d 751, 752 (Mo.App. W.D.1991), after amendments to the language in Rule 51.05). *See also State ex rel. Burns v. Goeke,* 884 S.W.2d 60 (Mo.App. E.D.1994) (also holding that after amendments to Rule 51.05 there was no right to a change of judge

under Rule 51.05 after appellate remand where the case was returned to the original judge).[1]

Both *State ex rel. Burns* and *Anderson* premise their holding on the clear language in Rule 51.05 that "[i]t is the identification of the [trial] judge which commences the time running." *Burns* at 62. They hold that if the case is remanded to the same judge who tried the original case, then a motion for change of judge, absent a request for cause, would be untimely after remand. This approach, however, suggests that if the trial judge on remand is a different judge, the Rule 51.05 timelines would be triggered anew.

■ In the case at bar, the case has been transferred to a new judge and is no longer before the original trial judge. Following the lead of *Anderson* and *Burns,* we hold that, in those cases where a case is reassigned between trial judges while a direct appeal is pending, a motion for change of judge is timely under Rule 51.05, provided it is filed within thirty days of the remand to the trial court for new trial. For timing purposes, the thirty days would be triggered by the issuance of the appellate court's mandate.

■ Although not addressed by the parties, we feel it necessary, given our analysis above, to consider the effect of filing a motion for change of judge under Rule 51.05 before designation of a trial judge. In light of our analysis, we must hold that Stickelber's motion was premature. In *State ex rel. Walters,* 22 S.W.3d at 743, the court discussed the effect of filing a motion for change of judge before

---

**1.** This district has, since *Anderson,* cited to *Hough* approvingly as authorizing a change of judge after remand even as to the original trial judge. *See State v. Isaiah,* 874 S.W.2d 429, 436 (Mo.App. W.D.1994). The statement within that decision regarding Rule 51.05 was *dicta* unnecessary to our decision, however,

because we held that Rule 51.05 had no application in a post-conviction proceeding under Rule 29.15. *See id.* Because a return after remand to the original trial judge is not the issue before us we need not resolve whether there is any conflict between the appellate districts regarding that specific issue.

a trial judge is designated after the filing of a new case.[2] In *Walters,* the case had been recently filed and had not yet been assigned to a trial judge by the presiding judge when the motions for change of judge were filed by the plaintiff.[3] The presiding judge denied these motions on the grounds that they were prematurely filed. The movant then sought relief from the Eastern District in the form of a writ of prohibition.

Despite the fact that a trial judge had not yet been designated, the *Walters* court held that the motion for change of judge was not premature and the presiding judge should have disqualified himself. *Id.* The underpinnings for the court's reasoning were twofold. First, the court observed that Rule 51.05 only prohibits a change of judge as a matter of right after the deadline has passed, and does not bar a party from seeking a change of judge before designation of the trial judge. Second, the court noted that the presiding judge could retain jurisdiction of the case indefinitely, even through a final judgment. *Id.*

Since *Walters* presents a situation at first blush not unlike that of the case at bar, the question arises whether *Walters* requires us to take a similar approach here. *Walters* is distinguishable on two grounds. First, the motion for change of judge in *Walters* was filed roughly two weeks after the filing of each plaintiff's petition, well within any of the deadlines within Rule 51.05. Here, the motion for change of judge was filed more than thirty days after the event that arguably would set the clock running—the effective date of the transfer to Judge Nixon. Second, there was not a direct appeal pending at the time the motion for change of judge was filed in the *Walters* case. This difference is relevant, as an appeal sharply limits the jurisdiction of the circuit court. In *Walters* the case was still active and ripe for judicial action other than administrative tracking and ministerial duties. Indeed, the *Walters* court observed that the presiding judge could even take the case to final adjudication without transferring the case to another judge for trial. *Id.* In light of the highly restricted jurisdiction of the circuit court while a case is on appeal, we do not believe that the rationale of *Walters* should be extended to this context.

For the reasons stated herein, our preliminary writ is made absolute. Respondent is therefore ordered to set aside his order of December 15, 1999, denying Relator's motion for change of judge. If Relator chooses to do so, he may refile his motion within the permissible time after the issuance of this court's mandate in WD 57798 and WD 57807 returns jurisdiction of the underlying case to the currently assigned division of the Circuit Court of Jackson County.

JOSEPH M. ELLIS, Judge, and EDWIN H. SMITH, Judge, concur.

---

**2.** Apparently in the circuit involved, all new filing went to the Presiding Judge for eventual assignment to a judge for trial. There may be a number of varied systems used by different circuits for new case filings. In some(for eg. Jackson County) the case may be assigned immediately upon filing to the trial judge and never technically lodge with the Presiding Judge or some separate assignment division.

**3.** The *Walters* case was consolidated before the appellate court with a nearly identical writ application, *State ex rel. Gan v. Schaeperkoetter,* that arose from that circuit at essentially the same time. *See Walters,* 22 S.W.3d at 741–42.