**STATE of Missouri, ex rel., Ben DELGADO, Relator,**

v.

**Honorable Michael E. MERRELL, Respondent,**

**Jerry Mitchell and Camelback Castle Corporation, Defendants.**

**No. 24747.**

Missouri Court of Appeals, Southern District, En Banc.

Oct. 10, 2002.

Randy R. Cowherd & Larry G. Luna, Springfield, for Appellant.

Gary W. Allman, Hollister, for Respondent.

ROBERT S. BARNEY, Judge.

Relator, Ben Delgado ("Relator"), seeks a Writ of Prohibition, or alternatively, a Writ of Mandamus, disqualifying Respondent, the Honorable Michael E. Merrell, Associate Circuit Judge of the 38th Judicial Circuit ("Respondent"), from proceeding as a trial judge on remand after appeal, in the case of Ben Delgado v. Jerry Mitchell and Camelback Castle Corporation, No. 38CV08990411, Circuit Court of Taney County.

The record shows that Relator previously sued Jerry Mitchell and Camelback Castle Corporation ("Defendants"), alleging Defendants owed Relator rent under an oral contract by commencing an action in the Associate Division of the Circuit Court. Defendants counterclaimed, alleging breach of oral promise. The Associate Circuit Judge assigned to hear such cases entered a docket entry certifying the matter "to [the] Circuit Court as subject matter exceeds the jurisdiction/Assoc. Court." Thereafter, Respondent was specially assigned to hear the matter by the Honorable James Eiffert, Presiding Judge. *See* § 478.240.2, RSMo 2000. After a hearing on May 26, 2000, Respondent entered judgment for Relator on his rent claim and entered judgment in the amount of $180,000.00 in favor of Defendants on their counterclaim. Relator appealed.[1]

The record further reveals that during the pendency of Relator's appeal, Respondent stood for election and was defeated by the Honorable Tony Williams at the general election held on November 7, 2000.

Relator's four year term thus expired on December 31, 2000. *See* Mo. Const. art. V, § 19 (1945, amended 1976). Judge Williams assumed office as an Associate Circuit Judge, 38th Judicial Circuit, on January 1, 2001.[2] Because of an increase in population, Taney County qualified in 2001 for an additional Associate Circuit Judge. *See* § 478.320, RSMo Cum.Supp. 1999. On August 14, 2001, the Honorable Bob Holden, Governor of the State of Missouri, appointed Respondent as an Associate Circuit Judge, and Respondent was sworn into office on August 22, 2001.

On October 16, 2001, this Court issued its Mandate reversing and remanding the underlying case for further proceedings.

On October 25, 2001, Relator filed for the first time his Application for Change of Judge pursuant to Rule 51.05, to "preserve his right to a change of judge from [Respondent] Judge Merrell...."[3] "On November 1, 2001, counsel for [R]elator appeared before both [Presiding] Judge Eiffert and [Respondent]. Judge Eiffert directed counsel to take up the motion before [Respondent]." On December 13, 2001, Respondent denied the pending Application for Change of Judge as being untimely. Relator's subsequent Motion to Reconsider the Application for Change of Judge was denied by Respondent on January 24, 2002. This Petition for Writ of Prohibition or Alternative Writ of Mandamus followed, and we issued a Preliminary Order in Mandamus, which we now make absolute.

---

1. The record is silent as to the award entered in favor of Relator on his rent claim. However, on appeal this Court determined that the "evidence [did] not sustain the damage award [of $180,000.00] rendered in Defendants' favor" and reversed and remanded the case "for further proceedings regarding Defendants' counterclaim." *Delgado v. Mitchell*, 55 S.W.3d 508, 514 (Mo.App.2001).

2. The record is devoid of a showing that Judge Williams was ever assigned as a trial judge for the underlying litigation either by local court rule or the specific assignment of the Presiding Judge.

3. All Rule references are to Missouri Court Rules (2001), unless otherwise set out.

Relator essentially maintains that since Respondent had been defeated in his re-election bid and was out of office some eight months, it was impossible for Respondent to have remained as the "designated" judge in the underlying case during the course of the underlying appeal. Accordingly, Relator argues that after remand, and upon Respondent's designation anew to hear the underlying case, Relator was entitled to exercise his peremptory right to a change of judge, pursuant to Rule 51.05.

On the other hand, Respondent maintains that if the same person is the "designated" judge both during the original trial and after remand, the identity of the Respondent as judge remains the same, irrespective of the route the judge and the case may have taken to arrive at that point. Accordingly, to be timely the Application for Change of Judge must have occurred prior to the first trial.

Rule 51.05 provides, in pertinent part, that:

(a) A change of judge shall be ordered in any civil action upon the timely filing of a written application therefor by any party. . . .

(b) The application must be filed within sixty days from service of process or thirty days from the designation of the trial judge, whichever time is longer. If the designation of the trial judge occurs less than thirty days before trial, the application must be filed prior to any appearance before the trial judge.

. . .

(e) The judge promptly shall sustain a timely application for change of judge upon its presentation. . . .

■ We first observe that pursuant to Rule 51.05 a "trial judge does not have jurisdiction to deny a motion for change of judge that is timely." *State ex rel. Stickel-*

*ber v. Nixon,* 54 S.W.3d 219, 222 (Mo.App. 2001). "Upon presentation of a timely application for a change of judge, the judge *shall* promptly sustain the application." *Atteberry v. Hannibal Reg. Hosp.,* 926 S.W.2d 58, 61 (Mo.App.1996); *see* Rule 51.05(e). In this connection, "[a] judge who fails to grant a timely application for change of judge is without jurisdiction." *Atteberry,* 926 S.W.2d at 61. "The Missouri Supreme Court held . . . that the right to disqualify is a keystone of our judicial system, and Missouri courts follow a liberal rule construing it." *State ex rel. Walters v. Schaeperkoetter,* 22 S.W.3d 740, 742 (Mo.App.2000); *see also State ex rel. Horton v. House,* 646 S.W.2d 91, 93 (Mo. banc 1983). "That same Court ruled further . . . that a civil litigant has a virtually unfettered right to disqualify a judge without cause on one occasion." *Walters,* 22 S.W.3d at 742; *see also State ex rel. Heistand v. McGuire,* 701 S.W.2d 419, 420 (Mo. banc 1985).

■ "Prohibition is appropriate where a judge has improperly denied a timely filed motion for change of judge." *Stickelber,* 54 S.W.3d at 221. "A writ of mandamus will lie 'to compel a court to do that which it is obligated by law to do . . . .' " *State ex rel. Harvey v. Wells,* 955 S.W.2d 546, 548 (Mo. banc 1997) (quoting *State ex rel. Schnuck Markets, Inc. v. Koehr,* 859 S.W.2d 696, 698 (Mo. banc 1993)).

■ We note that after Respondent rendered his judgment in the underlying case on May 26, 2000, the case was seasonably appealed to this Court. Under these circumstances, Respondent "lacked jurisdiction to do anything in the case beyond ministerial or other authorized acts." *Stickelber,* 54 S.W.3d at 223. This is because, as a general rule, "upon filing of a notice of appeal, a trial court loses almost all jurisdiction over a case." *Id.* "The remaining jurisdiction of a trial court is

sharply constrained, with few exceptions." *Id.* "Such a conclusion makes sense from the perspective that there is no trial pending or scheduled for a case on appeal." *Id.* "Indeed, from the trial court's perspective, the case has reached disposition." *Id.*

*Stickelber* teaches that no new designation of a trial judge can occur for purposes of Rule 51.05, while a case is pending on appeal. *Stickelber*, 54 S.W.3d at 223–24. "In such situations, while an appeal is still pending, there is no 'trial judge' designated for the case." *Id.* Nevertheless, "every case must be 'assigned' for tracking purposes to a sitting judge (or senior judge under special order)." *Id.*

However, the *Stickelber* court also acknowledged the viability of the general principles annunciated in *Anderson v. Anderson,* 861 S.W.2d 796 (Mo.App.1993) and *State ex rel. Burns v. Goeke,* 884 S.W.2d 60 (Mo.App.1994), that a Rule 51.05 motion would be untimely where it was sought on remand as to the same judge who first tried the case. *Stickelber,* 54 S.W.3d at 224.

We observe, however, that Respondent ceased being an Associate Circuit Judge on December 31, 2000, upon the expiration of his term of office, after he lost his bid for re-election.

"The term 'designated judge' has been used in describing judges who are in office at the time a case is assigned to them." *Hagler v. Seay,* 907 S.W.2d 786 (Mo. banc 1995). "The term has also been used to describe a judge assigned to hear a matter previously set before another judge." *Id.* It is our view that Respondent ceased being the "designated" trial judge for the underlying case after the expiration of his term of office. *See id.*[4]

Although Respondent had been sworn in as a new Associate Circuit Judge prior to the reversal and remand of the underlying case, Respondent, nevertheless, could not have continued being the "designated" trial judge assigned to try the case during that period of time when he was out of office. *Id.*

Upon reversal and remand, it was incumbent upon the Presiding Judge to either take upon himself the duties of sitting as the trial judge of the underlying case or designating, anew, another trial judge to hear the underlying case. *See* § 478.240, RSMo 2000. No authority has been presented to us, nor has our own independent research revealed any, which holds that

---

**4.** *Hagler* was a dissolution action. Pursuant to court rule Judge Dorman Steelman was assigned as trial judge to hear the case. At no time did either party file a peremptory application for change of judge, pursuant to Rule 51.05. The case was scheduled for trial for February 8, 1995, but prior to that time Judge Steelman's term ended on December 31, 1994, and Respondent, Judge Seay, was elected to succeed Judge Steelman, and was sworn into office January 1, 1995. Eight days later, pursuant to Rule 51.05, Relator husband filed his application for change of judge. Respondent, Judge Seay, overruled the motion as untimely. *Hagler,* 907 S.W.2d at 786. On review, the Supreme Court of Missouri observed that the "sole issue to be decided [in the litigation] is whether there was a 'designation of the trial judge' more than thirty days prior to January 9, 1995." *Id.* The Court observed that "Rule 51.05(b) starts the running of the time for filing the change of judge upon the 'designation of the trial judge.'" *Id.* at 787. Our high court observed that "[t]o restate the obvious, one may not be the designated trial judge unless such person is a judge." *Id.* It then determined that since Respondent, Judge Seay, became the designated trial judge *only* when he became the judge of the division to which the case had been assigned, under the plain language of the rule, Relator had thirty days to file a request for a change of judge. *Id.* Since the request was filed within that thirty day period the Supreme Court made absolute its preliminary writ of prohibition prohibiting Respondent, Judge Seay, from hearing the case. *Hagler,* 907 S.W.2d at 786.

under these factual circumstances, Respondent would automatically be "designated" the trial judge for the underlying case upon his reassuming his duties as Associate Circuit Judge, after an absence from his judicial office.[5]

Since there was no designated trial judge to hear the underlying case upon reversal and remand, the Presiding Judge exercised his judicial and administrative authority by designating Respondent, anew, to be the trial judge. *See* § 478.240, RSMO 2000. Under these circumstances, "[r]ule 51.05(b) start[ed] the running of the time for filing the change of judge upon the [new] 'designation of the trial judge.'" *Hagler*, 907 S.W.2d at 787.

"The rules governing change of judge give a civil litigant the right to disqualify a trial judge one time." *Id.* Under the plain language of the rule once Relator filed his Application for Change of Judge within thirty days from the designation of the trial judge, it should have been granted. *See id.* As previously set out, "[u]pon presentation of a timely application for a change of judge, the judge *shall* promptly sustain the application." *Atteberry*, 926 S.W.2d at 61.

It is uncontroverted that on November 1, 2001, Relator appeared before both Presiding Judge Eiffert and Respondent on his application for change of judge. Judge Eiffert directed counsel to take up the "motion" before Respondent.[6] Nevertheless, on December 13, 2001, Respondent denied Relator's application on the basis

that it had been "untimely filed." In this respect, Respondent had no discretion to deny the application. *See Hagler*, 907 S.W.2d at 787; *Atteberry*, 926 S.W.2d at 61.

Our preliminary writ is made absolute. Respondent is therefore ordered to set aside his order of December 13, 2001, denying Relator's Application for Change of Judge and is directed to enter an order sustaining Relator's Application for Change of Judge. *See Harvey*, 955 S.W.2d at 548.

PREWITT, SHRUM, JJ., and MONTGOMERY, P.J., Concur.

GARRISON, J., dissents in separate opinion.

PARRISH, J., dissents and concurs in dissenting opinion of GARRISON, J.

RAHMEYER, C.J., dissents and concurs in dissenting opinion of GARRISON, J.

GARRISON, Judge, dissenting.

I respectfully dissent. In my opinion, Relator's opportunity to automatically disqualify Judge Merrell pursuant to Rule 51.05 expired prior to May 26, 2000, when this case was tried and a judgment was entered. I do not believe that a new opportunity to do so arose after Judge Merrell was designated a second time as the judge in this action upon remand following appeal.

---

**5.** It is uncontroverted that on August 24, 2001, by administrative order, Presiding Judge Eiffert assigned Respondent to "Taney County Associate Division II" to hear the classes of cases as set out by local rule 6.1.4. Subparagraph (k) provided that the Division II judge would hear "[a]ll civil actions and proceedings for the recovery of money when the sum demanded, exclusive of interest and costs, does not exceed $25,000.00; (Section

517.011.l(1) RSMo)." Given the allegations of the pleadings, Respondent was not automatically assigned to hear the underlying case upon remand because of the monetary limitations of his authority per the cited local rule.

**6.** This ministerial/administrative assignment was confirmed by a later administrative docket entry on November 8, 2001.

Rule 51.05 has traditionally afforded the civil litigant "a virtually unfettered right on one occasion to unilaterally disqualify a judge who is subjectively sensed to be partial, prejudiced or lacking in objectivity." *State ex rel. Heistand v. McGuire,* 701 S.W.2d 419, 420 (Mo. banc 1985); (quoting *State ex rel. B C C v. Conley,* 568 S.W.2d 605, 609 (Mo.App.1978)).[1] Clearly, the purpose of Rule 51.05 is to provide an opportunity, if timely exercised, to disqualify a judge for purely subjective reasons.[2] That right, however, is limited to disqualifying a trial judge one time. *State ex rel. Hagler v. Seay,* 907 S.W.2d 786, 787 (Mo. banc 1995).

In *Burns v. Goeke,* 884 S.W.2d 60, 62 (Mo.App. E.D.1994), the court said that "[i]t is the identification of the judge which commences the time running" for the purpose of determining timeliness of a Rule 51.05(b) application. 884 S.W.2d at 62. It also said:

> The rule as it presently exists requires the parties to assess the acceptability of the trial judge within a short period after the judge's identity has been determined and move for a change of judge before any proceedings on the record begin. There is no real justification for allowing a party thereafter to move for a change of judge simply because the judge's rulings were contrary to the party's position. If true prejudice of the judge can be established, a remedy is available. See Rules 51.05(d) and 51.06(a).

*Id.* This is consistent with the rule that a party is not entitled to an automatic dis-

qualification of a judge assigned to the case upon remand when the same judge also presided over the original trial. *Id.; Anderson v. Anderson,* 861 S.W.2d 796, 800 (Mo.App. S.D.1993).

Even though Judge Merrell left office for a period of time while this case was on appeal, he was the judge assigned to the case both before and after the appeal. He was thus "identified" as the judge in this case prior to trial and appeal. To permit Relator to now disqualify Judge Merrell under Rule 51.05(b) would, in effect, permit him to do so because the judge's rulings were not consistent with his contentions in the case, a justification specifically disallowed by *Burns,* 884 S.W.2d at 62.

I would hold that Relator's opportunity to disqualify Judge Merrell pursuant to Rule 51.05(b) terminated prior to the original trial. Accordingly, I would quash the Preliminary Order in Mandamus.

---

1. Rule 51.05(b) has been amended twice since *Heistand.* While the manner of determining the timeliness of an application for a change of judge under that rule has undergone change, the theory behind the rule, i.e., permitting one automatic disqualification upon the filing of a timely application, has re-

mained constant. Therefore, the purpose of the rule, as stated in *Heistand,* is as viable today as then.

2. The availability of a disqualification for cause is dealt with in Rules 51.05(d) and 51.06(a), neither of which is at issue here.