In the Matter of L.T.C., b/n/f Justin COLLINS, and Justin Collins individually, Respondents,

v.

Lavonne REED, now Yates, Appellant,

v.

William Collins and Kathleen Collins, Respondents.

No. 26510.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 8, 2005.

Kevin L. Wibbenmeyer, Barklage, Brett, Martin, Wibbenmeyer & Hamill, P.C., St. Charles, for Appellant.

Lisa Ghan Blumenstock & Thomas M. Benson, Lowther Johnson, LLC, Springfield, for Respondents.

ROBERT S. BARNEY, Judge.

Appellant Lavonne Reed ("Mother") appeals the trial court's award of "sole legal and physical custody" of her child, L.T.C., to Respondents William and Kathleen Collins, the minor's paternal grandparents ("Grandparents"), pursuant to section 452.375.5(5).[1] In a parenting plan devised by the trial court, the trial court authorized visitation by Mother and Justin Collins ("Father").

This matter began in 1997 when a petition to establish the paternity of L.T.C., born November 20, 1994, was filed by Father.[2] In its judgment of paternity, the trial court found Father to be L.T.C.'s biological father and "granted primary physical placement of [L.T.C.] with Mother...."

Thereafter, on July 14, 1998, the trial court entered an order modifying the original custody arrangement and transferring "primary physical placement" of L.T.C. from Mother to Father.

On September 11, 2000, the trial court again modified custody of L.T.C. and "granted joint legal custody of the child ... to Mother and Father, with the child's residence being with Father."[3]

Thereafter, in October of 2002 a hotline call was placed to the Division of Family Services ("DFS")[4] regarding the possible sexual abuse of L.T.C. by Mother. Additionally, DFS had information that L.T.C. had himself sexually abused his stepbrother, the son of Father's new wife. Following a DFS investigation, both allegations of abuse were unsubstantiated.

On October 23, 2002, Father had L.T.C. admitted to Lakeland Hospital for a four or five day evaluation after allegations again arose that he had been inappropriately touching his stepbrother. It was reported that during his stay at the hospital, L.T.C. disclosed that Mother "made/taught him to do the sexual things to his [half] sister" and he admitted he had inappropriately touched his stepbrother but "he felt he couldn't stop." A psychiatrist later reported L.T.C. told her that "his mother showed him sexually explicit movements and discussed highly sexually charged behaviors [and] acts with him i[.]e. cunnilingus and fellatio." The physicians evaluating L.T.C. recommended he "shouldn't be placed in a home with small children" and that he would need further counseling.[5]

Subsequently, another hotline call was placed to DFS on July 23, 2003, alleging

---

1. All statutory references are to RSMo 2000. All rules references are to Missouri Court Rules (2004).

2. We note that Mother and Father were never married.

3. The record also reveals that at the time of this custody modification in 2000 there were allegations of physical abuse and negligent supervision on the part of Mother and her husband ("Stepfather"). There was photographic evidence of cigarette burns on L.T.C.'s body and testimony relating to an

incident in which Stepfather used "a tree switch and struck [L.T.C.]."

4. DFS is now known as the Division of Children's Services of the Department of Social Services.

5. Following L.T.C.'s release from Lakeland Hospital, L.T.C. began living with Grandparents due to concerns that he should not live with other small children. There was no formal order placing L.T.C. in Grandparents' custody.

Mother sexually abused L.T.C. The call was initially substantiated but was later reversed by the review board.[6]

Mother filed an amended motion to modify custody on August 1, 2003. In her motion, Mother argued that Father had moved to St. Louis with the child for a period of three months without providing her with his relocation information as required by statute; that Father had placed L.T.C. with his parents in St. Charles, Missouri; and, that Father had even registered L.T.C. for elementary school in St. Charles, Missouri. Mother argued it would be in L.T.C.'s best interest to be placed in Mother's custody.

On February 14, 2004, the record reveals there was an incident involving Mother's visitation with L.T.C. at a Burger King restaurant. Mother wanted to take L.T.C. with her for the weekend; however, Grandparents would not allow her to leave with the child. As a result, Grandparents called the police to standby at the restaurant to prevent Mother from leaving with L.T.C. The incident at Burger King resulted in an ex parte order of child protection being filed against Mother by Grandparents on L.T.C.'s behalf.

On April 30, 2004, Grandparents filed a "Motion to Intervene" in the matter, pursuant to Rule 52.12(a)(1) and section 452.375.5(5)(b). They also filed a "Petition for Intervention and Temporary Custody." In their pleadings, Grandparents averred

that L.T.C. had been in their care and custody since November 2, 2002, "following a recommendation from Lakeland Hospital," and that it would be in L.T.C.'s best interests for him to be placed with them in St. Charles, Missouri.

In its August 2, 2004, judgment, the trial court found, pursuant to section 452.375.5(5), that "both parents are unable to be a custodian of the child because both parents have small children in their home and [L.T.C.] ... should not live on a regular basis in such a home at this time." Based primarily on the foregoing findings, the trial court granted "sole legal and physical custody" of L.T.C. to Grandparents and set out its own parenting plan. Mother now appeals, raising two points of trial court error.

■■■ Our standard of review in a child custody case is governed, as in other judge-tried cases, by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Under this standard, we will affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.; Reeves–Weible v. Reeves,* 995 S.W.2d 50, 55 (Mo. App.1999).

We determine the trial court erred as a matter of law because it failed to make the required findings in compliance with section 452.375.6.[7] *Speer v. Colon,* 155 S.W.3d 60, 61–62 (Mo. banc 2005). Since

**6.** About this same time, DFS launched another investigation into Mother's parenting abilities, based on reports that her home was unsuitable for children and was very unclean. The allegations were later found to be unsubstantiated.

**7.** Section 452.375.6 states:
If the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interest of the child, the court shall include a written finding in the judgment or order based on

the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child. If a proposed custodial arrangement is rejected by the court, the court shall include a written finding in the judgment or order detailing the specific relevant factors resulting in the rejection of such arrangement.

the parties had not agreed to the custodial arrangement, the trial court was required to include in its judgment a written finding based on the public policy in section 452.375.4, and the factors listed in section 452.375.2(1)-(8), detailing the specific relevant factors that made the chosen arrangement by the trial court in the best interests of the minor child. *Id.; see also Walters v. Walters,* 113 S.W.3d 214, 219 (Mo.App.2003).

■ "Section 452.375 . . . governs custody of children." *Morse v. Morse,* 80 S.W.3d 898, 903 (Mo.App.2002). As it pertains to third-party custody or visitation, section 452.375.5(5)(a) states in pertinent part:

5. Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:

\* \* \*

(5) Third-party custody or visitation:

(a) When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, *and it is in the best interests of the child,* then custody, temporary custody or visitation may be awarded to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child.

(Emphasis added).

■ "We presume parental custody is in a minor child's best interests." *Young v. Young,* 14 S.W.3d 261, 264 (Mo.App.2000). "To rebut this presumption, the third party seeking custody must carry the burden of showing either that each parent is unfit, unsuitable, or unable to have custody or that the welfare of the child requires third-party custody." *Id.; see also Flathers v. Flathers,* 948 S.W.2d 463, 466 (Mo.App. 1997). Here, both Mother and Father testified regarding the fact that L.T.C. had inappropriately touched their children. There was sufficient evidence supporting the trial court's judgment that Mother and Father were "unable" to care for L.T.C., based on the fact that each had small children in their homes. Additionally, there was medical and psychiatric evidence supporting such a finding by the trial court. This evidence satisfied the first basis for rebutting the presumption in favor of either parent having custody over L.T.C., as required by section 452.375.5(5)(a). *See Young,* 14 S.W.3d at 264.

■ However, the trial court made no express finding as to the second requirement of section 452.375.5(5)(a), that it would be in the *best interests* of L.T.C. to be placed in the custody of Grandparents. *See* § 452.375.5(5)(a). As previously related, "[i]n making this determination, the trial court is required to look at all relevant factors including those found in § 452.375.2." *Jones v. Jones,* 10 S.W.3d 528, 539–40 (Mo.App.1999).

■ We also note that the "[t]he plain language of section 452.410.1 . . . provides no exception to the requirement that a moving party, any moving party, who seeks to modify a custody order must first establish that a substantial 'change in circumstances of the child or his custodian' has occurred." *Searcy v. Seedorff,* 8 S.W.3d 113, 117 (Mo. banc 1999) (quoting § 452.410.1).[8] In a modification of custody

---

8. Section 452.410.1 states in pertinent part: the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the

proceeding, as in the present matter, *before* reaching the issue of best interests, the trial court must first find that there has been a substantial change in circumstances of the child or custodial parent. § 452.410.1; *Searcy*, 8 S.W.3d at 117; *Wood v. Wood*, 94 S.W.3d 397, 405 (Mo. App.2003). Accordingly, the trial court's judgment is also inadequate because the trial court modified the custody of L.T.C. from Father to Grandparents without first making the express findings required by section 452.410.1.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion. *See Speer*, 155 S.W.3d at 62.

SHRUM, P.J., and GARRISON, J., concur.

circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.