Sherry M. **HUBER**, a Minor Child by her Next Friend, Brianna R. **BOOTHE** and Brianna R. Boothe, Individually, Appellants,

v.

Brian **HUBER**, Respondent.

No. WD 66417.

Missouri Court of Appeals,
Western District.

Oct. 31, 2006.

Steven D. Wolcott, Liberty, MO, for appellants.

Brent L. Winterberg, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, ROBERT G. ULRICH, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Judge.

Boothe appeals from a judgment entered in the Circuit Court of Clay County in a paternity suit granting joint legal and physical custody of her daughter, S.H., to her and the child's father, Brian Huber. In the petition and at trial, Boothe made allegations that Huber had sexually abused S.H. After finding that there was no credible evidence that Huber had ever abused S.H., the court entered a parenting plan granting the parents joint legal and physical custody of S.H. For the following reasons, we affirm that judgment.

Boothe and Huber lived together off and on for a period of about ten years. During that time, Boothe and Huber had a daughter, S.H., who was born on May 4, 2000. The couple separated for the final time in June 2002.

Subsequently, Boothe filed a petition seeking a declaration of paternity and sole custody of S.H. Huber filed a counter-motion seeking joint custody. The case was tried before a family court commissioner in May 2004. After the commissioner made his findings and recommendations, Judge Welsh, the circuit's presiding judge, handed down the circuit court's judgment on September 1, 2004. The court determined that Huber was S.H.'s biological father, that the couple should have joint legal and physical custody of S.H., and that Huber should pay child support to Boothe.

On November 1, 2005, this court reversed the trial court's judgment on appeal because the court did not make any findings related to the sexual abuse allegations that had been raised by Boothe and did not detail the relevant factors that supported a determination that the custody arrangement adopted by the court was in the best interest of the child. *Huber ex rel. Boothe v. Huber,* 174 S.W.3d 712, 716–17 (Mo.App. W.D.2005) (*"Huber I"*). The case was remanded to the trial court to "make the required written findings in

compliance with section 452.375.6, and take such other action as deemed appropriate." *Id.* at 717.

On remand, on November 30, 2005, Judge Welsh, entered findings to be incorporated in the prior judgment of September 1, 2004, in order to comply with the dictates of this court's opinion. The court found that there was no credible evidence that Huber had ever abused S.H. and that there was no evidence of a pattern of domestic abuse. The court further stated that "[t]he custody plan ordered by the court is in the best interest of the child and best protects the child and mother from any further threat of harm as it establishes the rights and duties of the parents concerning the child and puts to rest the allegations of sexual abuse." The court found that the custody order adopted by the court would promote frequent, continuing, and meaningful relationships with both parents and maximize the interaction of the child with both parents. Boothe brings two points on appeal from that judgment.

■ Our standard of review in a paternity action is governed, as in any court-tried case, by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *L.T.C. ex rel. Collins v. Reed,* 168 S.W.3d 142, 145 (Mo. App. S.D.2005). Accordingly, "we will affirm the trial court's judgment unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Sewell–Davis v. Franklin,* 174 S.W.3d 58, 59 (Mo.App. W.D.2005).

■ In her first point, Boothe contends that Judge Welsh lacked jurisdiction to enter a judgment in this case. In order to explain and support this contention, Boothe has included in the legal file one page of the docket sheet in the case covering the period from November 16, 2004, to April 18, 2005, and a copy of a notice to the attorneys of record dated November 16, 2004, notifying them of two specific docket entries. The latter document reflects that on November 15, 2004, the commissioner who heard the case recused himself and on November 16, 2004, "Cause assigned to Div. 5, Hon. K.E. Davis." The November 16, 2004 entry also appears on the docket sheet, although the recusal information does not. In addition, the docket sheet reflects that Boothe had filed a Motion to Amend Order for Clerical Mistake on November 30, 2004, and also contains a handwritten entry on December 21, 2004, that is barely legible but appears to state "Nunc Pro Tunc Order is entered." Based on these documents in the record,[1] Boothe asserts that the case was transferred from Judge Welsh to Judge Davis on November 16, 2004, and was never reassigned back to Judge Welsh. Boothe therefore reasons that Judge Welsh could not assume jurisdiction on remand over a case that had been assigned to Judge Davis.

■ The point is wholly devoid of merit and undeserving of the extended discussion that follows. We first note that the purported recusal of the commissioner and assignment of Judge Davis occurred well after the notice of appeal was filed and the case was pending in this court. Therefore, it is unclear what, if any, need existed for the commissioner to recuse at that late date since his participation ended when he made his findings and recommendations that resulted in Judge Welsh's entry of judgment on September 1, 2004. Similarly, there is a serious question as to what, if any, authority the circuit court had

---

1. Neither the original judgment nor the judgment nunc pro tunc is included in the legal file. A copy of the judgment nunc pro tunc has been attached as an appendix to Appellant's brief but does not appear anywhere in the record on appeal.

to transfer the case to Judge Davis at that late date. The case was no longer pending in the circuit court of Clay County but rather was pending on appeal in this court. "[A]s a general rule, 'upon filing of a notice of appeal, a trial court loses almost all jurisdiction over a case.'" *State ex rel. Delgado v. Merrell*, 86 S.W.3d 468, 470 (Mo.App. S.D.2002) (quoting *State ex rel. Stickelber v. Nixon*, 54 S.W.3d 219, 223 (Mo.App. W.D.2001)). "'The remaining jurisdiction of a trial court is sharply constrained, with few exceptions.'" *Id.* at 470–71 (quoting *State ex rel. Stickelber*, 54 S.W.3d at 223). "'When the terms of mandate remand the cause to the subordinate tribunal, the effect is to revest jurisdiction in that court to take the acts directed.'" *Lombardo v. Lombardo*, 120 S.W.3d 232, 243 (Mo.App. W.D.2003) (quoting *Moore v. Beck*, 730 S.W.2d 538, 540–41 (Mo. banc 1987)).

Beyond those issues, there is then the concern over what authority the circuit court had to enter a nunc pro tunc order without leave of this court while the appeal was pending. Rule 74.06(a) provides:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. *During the pendency of an appeal, such mistakes may be so corrected with leave of the appellate court.*

(emphasis added). There is nothing in the record before this court indicating that anyone ever sought leave of this court to enter a nunc pro tunc order, much less that such request was granted. Furthermore, there is nothing in this record or in our opinion in *Huber I* that even suggests that the purported recusal, assignment of Judge Davis, and Nunc Pro Tunc Order

were ever brought to the attention of this court during the pendency of that appeal.

Moreover, even if we assume *arguendo*, that the recusal, assignment, and Order were all authorized by law and properly handled, the record in this case is so incomplete and inadequate as to make it impossible for this court to decide the issue Boothe argues. As noted, the docket sheet contained in the legal file ends on April 18, 2005, while our opinion in *Huber I* wasn't handed down until November 5, 2005, and the circuit court's subsequent findings that it incorporated into its September 1, 2004 judgment were entered on November 30, 2005. To illustrate, Judge Welsh as Presiding Judge of the circuit could have reassigned the case to himself at some point after April 18, 2005, and it would not appear in the record before us.

■■■ "Rule 81.12(a) provides that the record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented." *Citibank (South Dakota) N.A. v. Edwards*, 147 S.W.3d 810, 811 (Mo.App. W.D.2004) (internal quotation omitted). "It is the duty of an appellant to furnish a record containing all the evidence necessary for the appellate court to determine the questions on appeal." *McAllister v. McAllister*, 101 S.W.3d 287, 292–93 (Mo. App. E.D.2003). Where, as here, the record does not contain all information and documents necessary for this Court to determine an issue presented on appeal, review by this court is impossible, and the claim of error must be dismissed. *Edwards*, 147 S.W.3d at 811; *In re Marriage of Weinshenker*, 177 S.W.3d 859, 862 (Mo. App. E.D.2005).

And finally, this Court's mandate remanded the case "to the Circuit Court of Clay County for further proceedings in conformity with the opinion of this Court." Judge Welsh was the presiding judge of

the Circuit Court of Clay County and, as such, had the general authority to assign judges to hear cases under § 478.240.2.[2] Likewise, Judge Welsh was the judge that entered the judgment that was reversed by this Court on appeal. Judge Welsh clearly had the authority to handle the case himself on remand and did not act in excess of his jurisdiction in entering the findings required by this court's opinion. Point denied.

In her second point, Boothe contends that the trial court abused its discretion in finding that the evidence that Huber abused S.H. was not credible and that the trial court's award of custody, therefore, was not in the best interest of S.H. Boothe claims that "substantial and compelling evidence was presented on behalf of the Appellant that the child had been inappropriately touched by the Respondent." [3]

"We must affirm the decision of the trial court in a custody dispute unless it is against the weight of the evidence, there is no substantial evidence to support it, or it erroneously declares or applies the law." *State ex rel. State of Kansas Soc. & Rehabilitation Servs. v. R.L.P.*, 157 S.W.3d 268, 276 (Mo.App. S.D.2005). "The trial court is afforded broad discretion in awarding child custody, and we will affirm its decision unless we are firmly convinced that the welfare of the child requires a

different disposition." *Sewell–Davis*, 174 S.W.3d at 59. "Furthermore, greater deference is given to the trial court's determination in child custody proceedings than in any other type of case." *Arrington v. Hampton*, 153 S.W.3d 925, 927 (Mo.App. W.D.2005). "We defer to the trial court's superior ability to assess the credibility of witnesses and view all facts and reasonable inferences in a light most favorable to its decision." *Dunkle v. Dunkle*, 158 S.W.3d 823, 832–33 (Mo.App. E.D.2005). "We presume that the court awarded custody in accordance with the children's best interests after reviewing all of the evidence and we will reverse its decision only if we are firmly convinced that the welfare and best interests of the children require otherwise." *Id.* at 833. "We do not reweigh the evidence, even if the evidence could have supported another conclusion." *Id.*

We initially note that Boothe has failed to file on appeal any of the sixteen exhibits that were offered and received into evidence by the trial court. Included in those exhibits were the reports and records of the various experts opining as to whether the allegations of abuse were substantiated. Without the inclusion of those exhibits in the record on appeal, it is impossible for this court to properly assess whether the trial court's finding was sufficiently supported by the record or against the weight of the evidence.

---

**2.** Section 478.240.2 provides that "the presiding judge of the circuit court shall have general administrative authority over all judicial personnel and court officials in the circuit, including the authority to assign any judicial or court personnel anywhere in the circuit, and shall have the authority to assign judges to hear such cases or classes of cases as the presiding judge may designate, and to assign judges to divisions."

**3.** In arguing this point, Boothe attempts to raise issues not included in her point relied on or remotely related thereto. At one point,

she contends that the trial court should have conducted an evidentiary hearing because of the amount of time between the trial court's original judgment and this Court's remand. She later claims that the findings entered by Judge Welsh were not sufficient to comply with the dictates of this Court's prior opinion. "An appellate court need not consider issues raised in the argument portion of a brief that are not raised in the point relied on." *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 96 (Mo. App. W.D.2006).

As noted *supra,* "Rule 81.12(a) provides that the record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented." *Edwards,* 147 S.W.3d at 811 (internal quotation omitted). "It is the duty of an appellant to furnish a record containing all the evidence necessary for the appellate court to determine the questions on appeal." *McAllister,* 101 S.W.3d at 292–93. Where, as here, the record does not contain the evidence necessary for this Court to determine an issue presented on appeal, review by this court is impossible, and the claim of error must be dismissed. *Edwards,* 147 S.W.3d at 811; *In re Marriage of Weinshenker,* 177 S.W.3d at 862.

Moreover, having gratuitously reviewed the transcript of the proceedings below, we find that the trial court's findings were supported by sufficient evidence and were not against the weight of the evidence. The primary thrust of Boothe's argument is that she produced evidence that would have supported a finding that Huber had abused S.H. and that the trial court should have accepted that evidence as credible. As noted *supra,* under our standard of review, we are obligated to defer to the trial court's assessment of credibility and will not reweigh the evidence. *Dunkle,* 158 S.W.3d at 832–33. On the record before us, we are simply not convinced that the welfare of the child requires a different disposition. Point denied.

The judgment is affirmed.

All concur.