**Keith Elwood FRAME, Respondent,**

v.

**Josephine Ellen FRAME, Appellant.**

**No. WD 36429.**

Missouri Court of Appeals, Western District.

Aug. 13, 1985.

Allan D. Seidel, Trenton, for appellant.

R.E. Moulthrop Bethany, for respondent.

Before CLARK, P.J., and KENNEDY and NUGENT, JJ.

NUGENT, Judge.

Josephine Frame appeals the court's division of marital property in its dissolution decree. She contends that the division of marital property was against the weight of the evidence and was not a just division of the property because it gave her a cash award equal to only one-third of the marital assets.

We dismiss the appeal for lack of final judgment.

The parties were married on two occasions. They were first married in 1957 and divorced in 1972. Even though the marriage was dissolved, they continued to live together, never physically dividing the property as set forth in their property settlement. They remarried on June 5, 1975, and separated on August 4, 1983.

The testimony regarding the parties' property showed that their primary source of income was from farming, although Mrs. Frame was occasionally employed outside the home as a maid and housekeeper. Keith Frame, the husband, owned a 115 acre farm before their first marriage, and during that marriage they acquired a second farm that became their home during the years they were together. In accordance with a property settlement in the dissolution of their first marriage, the farm and all the personal property went to Mr. Frame. Mrs. Frame got $10,750 in that settlement.

At the time of the second divorce, except for a few items of old farm machinery, all the other property involved in this case had been acquired by the parties after their remarriage in 1975.

At trial, the evidence was not developed regarding the property the Frames acquired during their second marriage or its value. The only evidence as to what the parties owned and its value was Mr. Frame's testimony. Throughout the trial he repeatedly expressed doubt as to what he owned, when it was acquired and what its present value was. No financial statements were introduced except tax returns from 1981 and 1982. Mrs. Frame offered no evidence as to what the parties owned or its value except for the household goods acquired during their marriage.

From the evidence adduced at trial, however, the following can be determined. The parties owned a 1983 Chevrolet Caprice that was purchased for $10,000 about a year before their separation. No evidence was presented as to its current value. The evidence also disclosed their ownership of a 1977 Chevrolet four wheel drive truck to which no value was attached. The truck had a powerlift attachment which also was not evaluated.

Mr. Frame testified as to the couple's livestock. At the time of the trial, they owned as marital property twenty-one calves, valued at about $2,645. That value was uncontroverted. They also owned forty-nine cows valued at $13,475 by both parties. Finally, the couple owned three bulls. One of the bulls had been purchased shortly before trial for $2,000; the other two were much older. Mrs. Frame valued the bulls at $3,476 ($2,000 plus two 1,800 pound bulls at forty cents per pound). Her husband valued the bulls at $2,160 (three 1,800 pound bulls at forty cents per pound).

In addition, Mr. Frame testified that in the year after the separation, he sold fifty calves at fifty-eight cents a pound and each calf averaged between seven hundred and eight hundred pounds. Thus, he received approximately $21,750 in proceeds from that sale. He also sold some of his older cows but gave no testimony as to how many were sold and for what amount. He also did not testify as to what he did with the proceeds from those sales. He did not account to his wife for any of the proceeds. During the separation, Mr. Frame gave his wife about $1,500. In their briefs both parties include the proceeds from the sale of the calves as a separate item of property in evaluating the marital estate, although Mr. Frame contends that only forty calves were sold.

Both parties set the total value of the farm equipment at $14,000. The evidence was that the checking and savings account at the time of divorce totalled $3,000. Mrs. Frame testified that the value of the various household furnishings purchased after the second marriage is a total of $3,225, an amount uncontroverted at trial.

Finally, after the second marriage Mr. Frame bought a building in Bethany. He bought that property in "partnership" with his step-daughter and appears to have at least an undivided one-half interest in it.

No evidence was presented as to the source of funds used to purchase the property, nor does the evidence show what part of the purchase price was financed. Mr. Frame testified that the property was mortgaged, but the record indicates that the mortgage had been paid at the time of trial. According to his testimony, the property was sold in 1981 for $35,000. The parties' 1982 income tax return shows that the property was sold in September, 1982. No testimony was given as to the interest charged the buyer, but Mr. Frame testified that the buyer was to pay $3,000 down and $400 a month for twelve years, which totals $60,600. At the time of trial, the buyer had been paying about two years which would total about $12,600.[1] Mr. Frame also testified that he deposited the money he received from the buyer into his and his step-daughter's joint bank account to which his wife had no access. The evidence does not show how much was in the account at the time of trial. The buyer apparently still owes about $48,000.

In addition, the evidence also showed that the parties owned an implement trailer and a disk attachment to a Massey Ferguson tractor which were not valued.

Thus, the evidence at trial seemed to show the following marital property and its values.

| | |
|---|---|
| 1983 Caprice | $10,000 |
| 1977 Chevrolet truck w/attachment | no value |
| 21 calves | 2,645 |
| 49 cows | 13,475 |
| 3 bulls | 2,160–3,475 |
| Proceeds from sale of calves in 1983 | 16,820–21,750 |
| Proceeds from sale of cows in 1983 | no value |
| Farm machinery | 14,000 |
| Bank account | 3,000 |
| Household goods | 3,225 |

| | |
|---|---|
| Balance due from sale of ½ interest in real estate | 17,500[2] |
| Disc | no value |
| Implement trailer | no value |
| | 82,825–89,070 |

Mr. Frame also testified that he owed the bank $10,000 for current farming operations. He stated that this was the only debt of which he was aware. The trial court entered its decree dividing the property as follows:

[The Court] finds that the Petitioner is the owner of certain real estate referred to in the evidence and that the same is non-marital in nature and should be and is free of any and all claims on the part of the Respondent. It is found and determined that the parties own *furniture, household goods, cattle,* and *farm machinery,* which is marital in nature and that, after making an allowance of the outstanding indebtednesses which are assumed by the Petitioner, one-half of the net value thereof is determined to be the sum of $23,500.... (Emphasis added.)

The court ordered Mr. Frame to pay his wife $23,500, $10,000 to be paid within thirty days of the decree and the balance of $13,500 to be paid in sixty monthly installments of $225 each.

■ The court's judgment does not dispose of all of the marital property and separate property. If the dissolution decree does not dispose of all of the property of the parties, the judgment is not final, and this court can acquire no jurisdiction. *Anspach v. Anspach,* 557 S.W.2d 3 (Mo. App.1977).

■ In its decree the trial court does not specifically mention the 1983 Chevrolet Caprice or the 1977 Chevrolet truck. The vehicles cannot be considered to be furniture, household goods or cattle. The truck,

---

**1.** $3,000 down plus twenty-four months at $400 per month.

**2.** The $17,500 figure we use for the sake of convenience is half of the purchase price of $35,000. Although Mr. Frame will be realizing at least $24,000 in the future from the sale, that will be over a ten-year period while Mrs. Frame

supposedly will have the use of her share immediately. We leave it to the trial court to determine the exact value of that asset. That determination also requires the court to find whether the step-daughter is entitled to any part of the proceeds of the sale of the building in Bethany arising out of her "partnership" with Mr. Frame.

but not the Caprice, might be included as a piece of farm machinery. Mrs. Frame had asked the court to award her the Caprice. The court's decree does not make clear whether it considered the vehicles in its valuation, whether it intended the husband to get the vehicles along with the other personal property specifically mentioned, or whether it considered them to be separate property. We simply do not know what the trial court intended regarding the vehicles or whether the court even considered them at all.

The court's decree also does not mention the bank accounts. Mr. Frame testified that at the time of trial the accounts had $3,000 in them. The court does not state whether they are separate or marital property or whether they were considered in its evaluation.

The decree also does not mention the balance due from the sale of the building in Bethany. At least a half interest in that property was purchased during the parties' marriage, and the building was sold for $35,000 or $60,600, depending upon facts not fully disclosed by the evidence. Mr. Frame's share of the proceeds are presumed to be marital property. *In Re Marriage of Schulz*, 583 S.W.2d 735, 742 (Mo. App.1979). He offered no evidence to rebut that presumption.

The court's decree also does not dispose of the proceeds from the sale of the calves in 1983. Unfortunately, no evidence was adduced as to what became of the proceeds, whether Mr. Frame used them to retire marital debts, reinvested them in other marital property already being considered, or whether he used them for his own personal living expenses or on his separate property or still has them on hand. He did not account to his wife for any of the proceeds. Both parties consider the proceeds from the sale of the calves as a separate item of property in evaluating the marital estate.

While discussing the trial court's decree, we also note that the record is not clear whether the court considered Mrs. Frame's evidence, undisputed by her husband, that

marital property was used to reduce the mortgage on a farm that was Mr. Frame's separate property. That evidence warrants a determination by the trial court because "a charge may be imposed on the separate property to the extent that separate funds of the other spouse or marital funds are expended to reduce the debt or enhance the value of the asset in question." *Bishop v. Bishop*, 658 S.W.2d 512, 515 (Mo.App.1983); *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 272 (Mo.App.1979).

In addition, we note that at trial Mrs. Frame requested that she be awarded certain knickknacks in the house, a Seth Thomas Clock and a lazy susan. The trial court awarded the furniture and household goods to the husband. Whether that included those items or whether they were awarded to her should be made clear by the trial court.

One of the primary purposes of the Dissolution of Marriage Act is that the rights of the parties in their separate and marital property be determined. *Anspach v. Anspach, supra*, 557 S.W.2d at 5. The court must first decide whether each asset or class of assets is marital or separate property in accordance with § 452.330.2. *Id.* When the status of the property of the parties is not determined, the court has not exhausted its jurisdiction, and the judgment is not final and appealable. *Id.* The court here did not designate all the property as marital or separate property. The parties did not present sufficient evidence as to the values of the properties. Finally, the court did not determine the rights of the parties in all of the property.

Mr. Frame makes the assumption that, although the trial court did not expressly mention all the marital assets, it took them into consideration in evaluating the marital estate and the court intended that the $23,500 represents the value of half of *all* the marital property. Thus, the court valued the marital estate at $47,000 net, $57,000 gross. He purports to get this value for all the marital property but only by excluding the Caprice and the household goods and

by valuing the balance due Mr. Frame from the sale of the real estate at $8,000.

We are unwilling to make such an assumption. Not only is such an assumption against the plain wording of the trial court's decree, it also is not supported by the evidence. Unfortunately, based on the evidence at trial, an accurate valuation of the marital property is very difficult even if possible. Many unanswered questions remain that could materially affect the valuation of the marital property. Although the trial court need no longer assign values to the marital property, evidence from which the value of the marital property can be determined must appear. *Dardick v. Dardick*, 670 S.W.2d 865 (Mo.1984) (en banc). Only by having evidence from which a fair and accurate valuation of the marital property can be made can a just division of the property be achieved. *Green v. Green*, 623 S.W.2d 265, 267 (Mo. App.1981).

For the foregoing reasons we dismiss the appeal.

All concur.