Norma D. REYNOLDS, Appellant,

v.

James L. REYNOLDS, Respondent.

Nos. WD 60665, WD 61091.

Missouri Court of Appeals,
Western District.

July 15, 2003.

Anita I. Rodarte, Kansas City, MO, for appellant.

Don A. Peterson, Kansas City, MO, for respondent.

Before SPINDEN, P.J., BRECKENRIDGE and NEWTON, JJ.

PATRICIA BRECKENRIDGE, Judge.

Norma D. Reynolds (Wife) appeals the judgment and decree of dissolution of her marriage to James L. Reynolds (Husband). The trial court dissolved the parties' marriage on May 25, 2001, and entered a judgment dividing their property on October 10, 2001. Thereafter, on February 1, 2002, the trial court entered what it denominated as "Findings and Recommendations[,] Judgment and Order Nunc Pro Tunc," which attached an exhibit to the judgment that divided the parties' marital and non-marital personal and real property. Wife appeals both judgments, and raises ten points of error. First, Wife claims that the trial court erred in dividing and valuing the proceeds from the sale of the parties' marital real property at 411 West Maple because it improperly granted Husband a credit for his non-marital contribution to the purchase of that property and its valuation was not supported by the evidence. Second, Wife asserts that the trial court erred in selling, valuing, and dividing the parties' marital real property known as Blairstown Farm in conflicting provisions within the judgment. Third, Wife argues that the trial court erred in entering its order on February 1, 2002, to attach Husband's Exhibit 9 to the October 10 judgment because it did not merely correct a clerical error but instead changed the October 10 judgment. Fourth, Wife alleges the trial court erred in awarding her marital household goods

valued at $89,642 because it did not identify the property she is to receive. Fifth, Wife claims the trial court erred in awarding Husband marital personal property valued at $75,631 and a judgment against her "in the sum of $75,631.00 less credit for items of such personal property awarded to [Husband] that [Wife] returns to [him]" because it did not identify the property he is to receive, it awards the value of the property to him twice, and is conditional. Sixth, Wife contends that the trial court erred in awarding Husband a judgment against her in the amount of $25,531 for his non-marital property sold by Wife because it is vague and unenforceable in that it did not include a list of the non-marital property sold by Wife and it is conditional. Seventh, Wife maintains that the trial court erred in awarding Husband "the right to pursue and recover any claim" he may have against her for breach of their settlement agreement. Eighth, Wife asserts that the trial court erred in its total division of the parties' marital property because it is so disproportionately weighted in favor of Husband as to be inequitable and a misapplication of section 452.330. Ninth, Wife claims that the trial court erred in awarding the entire claim against the William Randall Estate to Husband because the value of the claim could not be determined. Tenth, Wife contends that the trial court erred in ordering her name to be changed from "Reynolds" to "Pemberton" because she withdrew her request for a name change at trial.

This court finds that: (1) the trial court did not err in awarding Husband all of the West Maple proceeds as a credit for his non-martial contribution, and the valuation of the proceeds was supported by the evidence; (2) the trial court did not err in ordering the sale of and valuing, but erred in dividing, Blairstown Farm because the division was uncertain; (3) the trial court did not err in amending the October 10 judgment on February 1 because the October 10 judgment was not a final judgment so the trial court retained jurisdiction to amend it; (4) the trial court erred in its award of marital household goods to Wife because its award of the Martin D28 guitar was uncertain; (5) the trial court erred in its award of marital personal property to Husband because the award was conditional; (6) the trial court erred in its award of non-marital property to Husband because the award was conditional; (7) the trial court erred in awarding Husband the right to pursue any claim he may have against Wife for breach of the settlement agreement because the settlement agreement was never enforceable; (8) the trial court did not err in awarding the entire claim against the William Randall Estate to Husband because there was evidence from which the value of the claim could be determined; and (9) the trial court erred in ordering Wife's name change because the evidence showed that she did not want her name to be changed. This court also finds that the trial court erred in awarding Wife the right to pursue any claim she may have against Husband for the possession or disposition of her diamond ring because it does not achieve a complete distribution of all of the parties' property. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and remanded. Because portions of the property division are reversed and remanded, this court will not address Wife's challenge in her eighth point to the entire division of marital property.

**Factual and Procedural Background**

"On appeal of a dissolution of marriage proceeding, [this court] review[s] the evidence in the light most favorable to the trial court's decision." *Taylor v. Taylor,* 12 S.W.3d 340, 344 (Mo.App.2000). Husband and Wife were married on April 4,

1987, in Independence. They separated on August 1, 1997. They had no children together. On February 14, 1998, Wife filed a petition for dissolution of the marriage.

A trial was held before a commissioner on May 23 to May 24, 2001. On May 25, 2001, the trial court adopted the commissioner's findings and recommendations and entered a judgment dissolving the marriage. On October 10, 2001, the trial court adopted the commissioner's findings and recommendations on the division of property as its judgment and decree. The trial court found that Husband had made substantial contributions from his pre-marital assets to the marital assets, "for which he should receive credit in the division of the marital property." The court also found that Wife had "disposed of marital and non-marital property of [Husband] for which she should account to [Husband] by an adjustment in the allocation and reflected in the division of the marital property." In its judgment, the court, "after considering all relevant factors," including the parties' economic circumstances, Husband's contribution to the marriage as a homemaker, the value of the parties' non-marital property, the parties' conduct during the marriage, and the testimony and credibility of the witnesses, divided the property and debts of the parties.

With regard to the parties' marital real property, the court awarded all of the proceeds from the sale of marital property located at 411 West Maple to Husband. The court also ordered the sale of another piece of martial property, Blairstown Farm, and, after giving $65,214.34 to Husband for his non-marital contribution and $23,000 to Wife for her non-marital contribution, divided the proceeds equally between the parties. Later in the judgment, the trial court divided the proceeds of Blairstown Farm equally between the par-

ties, after payment of credit for rents and expenses of sale. The trial court also reduced Wife's share to satisfy the judgments awarded to Husband against her for the value of household goods that Wife disposed of, the value of Husband's non-martial property that Wife disposed of, and Husband's non-marital contribution to the purchase of Blairstown Farm. The trial court did not give Wife $23,000 for her non-marital contribution.

As to the parties' household goods accumulated during the marriage, the trial court awarded Wife property worth $89,642 and Husband property worth $75,631 "[p]er attached description or itemization." The trial court further gave Husband "judgment against [Wife] in the sum of $75,631.00 less credit for items of such personal property awarded to [Husband] that [Wife] returns to [Husband] as herein ordered by the Court." In addition, the trial court awarded Husband "the non-marital property of [Husband] itemized on the attached exhibit and having a value of $500.00[.]" No descriptions, itemizations, or exhibits were attached to the judgment, except for a legal description of Blairstown Farm.

The trial court also "awarded [Husband] judgment against [Wife] for the non-marital property of [Husband] sold by [Wife] in the sum of $25,531.00 less credit for items of such personal property awarded to [Husband] that [Wife] returns[.]" The trial court further gave Husband "the right to pursue and recover on any claims [he] may have against [Wife] for breach of the Memorandum of Settlement agreement," "the right to pursue and recover on any claim against [Wife] as he may have concerning her possession or disposition of a certain Martin D28 guitar in which a 1/2 interest is awarded to him as his separate personal property," and "the exclusive right to pursue and recover any claim the

parties have against the Estate of William J. Randall relating to environmental clean-up of the 411 West Maple property." Likewise, the trial court awarded Wife "the right to pursue and recover on any claims against [Husband] as she may have concerning his possession or disposition of her 2 1/2 caret [diamond] ring or a certain Martin D28 guitar in which a 1/2 interest is awarded to her as her separate proper-ty." Finally, the trial court ordered that Wife's name be changed from "Reynolds" to "Pemberton."

On November 9, 2001, Wife filed a notice of appeal. On December 20, 2001, Hus-band filed a motion for order nunc pro tunc, asking the trial court to attach his Exhibit 9 to the October 10 judgment. Exhibit 9 included a list of all of the par-ties' property, the fair market value of the property, whether the property was mari-tal or separate, who possessed the proper-ty, and to whom the trial court awarded the property. In his motion, Husband claimed that this itemization was the itemi-zation that the trial court referred to in the October 10 judgment with the lan-guage "[p]er attached description or itemi-zation," but the itemization had not been attached to the judgment through inadver-tence and clerical error. He argued that the attachment of Exhibit 9 would make no substantive change in the judgment but would "merely cause[ ] the record to re-flect the true judgment of the Court," so a nunc pro tunc order was appropriate. In response, Wife asserted that because she had already filed her notice of appeal, the trial court had lost jurisdiction over the case. In addition, she argued that because Husband's motion would actually amend significant portions of the judgment, in-stead of just correct a clerical error, a nunc pro tunc order was not appropriate. On February 1, 2002, the trial court en-tered its "Findings and Recommenda-tions[,] Judgment and Order Nunc Pro

Tunc," attaching Husband's Exhibit 9 to the October 10 judgment. In this judg-ment, the trial court awarded Husband all interest in Blairstown Farm and Wife all interest in the Martin D28 guitar. Wife subsequently appealed the February 1 judgment. Wife's two appeals have been consolidated in this proceeding.

## Standard of Review

When reviewing an appeal of a dissolution of marriage proceeding, "[t]his court will review the judgment of the trial court under the standard of review appli-cable to any other court-tried case." *Eck-hoff v. Eckhoff*, 71 S.W.3d 619, 622 (Mo. App.2002). The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or ap-plies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court defers to the trial court's determination of the credibility of witnesses. *David v. David*, 954 S.W.2d 611, 614 (Mo.App.1997). Additionally, "[t]he party challenging the dissolution decree has the burden of dem-onstrating error." *Taylor*, 12 S.W.3d at 344.

Wife raises ten points on appeal. Wife's third point raises the issue of this court's jurisdiction to hear the appeal. As such, this court will consider Wife's points out of order so it can address the jurisdictional issue first.

## Judgment is Final and Appealable

In her third point, Wife claims that the trial court erred in amending its judgment on February 1 because it had lost jurisdic-tion over the case upon the filing of her notice of appeal on from the October 1 judgment. Specifically, she argues that although the February 1 amendment is labeled a nunc pro tunc order, it is not a

proper nunc pro tunc order because it does more than just correct a clerical error. Instead, it actually "modif[ied] the division of property to conform to an exhibit from [Husband] never received into evidence or made a part of the court's record." Thus, she maintains that the trial court did not have jurisdiction to amend its October 1 judgment, so the February 1 amendment is void.

"As a general matter, upon filing of a notice of appeal, a trial court loses almost all jurisdiction over a case." *State ex rel. Stickelber v. Nixon*, 54 S.W.3d 219, 223 (Mo.App.2001). The trial court does retain some jurisdiction over the judgment, however. *Id.* For example, under rule 74.06(a), the trial court can still enter nunc pro tunc orders to correct clerical errors:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected with leave of the appellate court.[1]

The purpose of the nunc pro tunc order " 'is to correct some error or inadvertence in the recording of that which was *actually done*, but which, because of that error or omission was not properly recorded[.]' " *Pirtle v. Cook*, 956 S.W.2d 235, 240 (Mo. banc 1997) (quoting *City of Ferguson v. Nelson*, 438 S.W.2d 249, 253 (Mo.1969)). A nunc pro tunc order " 'may not be used to order that which was *not* actually done, or to change or modify the action which was taken.' " *Id.* (quoting *Nelson*, 438

S.W.2d at 253). A nunc pro tunc amendment " 'does not lie to correct judicial errors, mistakes, or oversights, to create a new record, or to enter a judgment never made or one different from that actually rendered.' " *Henderson v. Fields*, 68 S.W.3d 455, 465 (Mo.App.2001) (quoting *Coon v. Dryden*, 46 S.W.3d 81, 88 (Mo. App.2001)). To determine whether a court's order constitutes a modification of the judgment or simply a nunc pro tunc order, this court must decide whether the "order changes the original judgment or only the record." *Pirtle*, 956 S.W.2d at 242. "[T]he clerical error must be discernible from the record." *Id.* at 243.

In this case, the trial court divided the parties' marital personal property in the October 10 judgment "[p]er attached description or itemization." The trial court awarded personal property having a value of $89,642 to Wife and personal property having a value of $75,631 to Husband, "[p]er attached description or itemization." The trial court also awarded to Husband his non-marital property "itemized on the attached exhibit and having the value of $500.00[.]" No descriptions, itemizations, or exhibits were attached to the judgment.

On December 20, 2001, after Wife filed her first notice of appeal, Husband filed a motion for order nunc pro tunc, asking the trial court to attach his Exhibit 9 to the October 10 judgment. Exhibit 9 contained a detailed list of the parties' separate and marital real and personal property. It also noted a value for each item of property and indicated to whom each item was awarded. In his motion, Husband claimed that the itemization in Exhibit 9 was the itemization that the trial

---

1. Although not raised by Wife on appeal, no leave was sought from the appellate court to enter the nunc pro tunc order in this case. Because the claim of error relating to the nunc pro tunc order is resolved on other grounds, however, this court will not address this issue.

court referred to in its October 10 judgment with the language "per attached description or itemization," but that it had not been attached due to inadvertence or clerical error. Wife filed suggestions in opposition to Husband's motion. On February 1, 2002, after a hearing, the trial court issued a judgment and order nunc pro tunc attaching and incorporating Husband's Exhibit 9 into the October 10 judgment.

Although the trial court called the February 1 amendment a nunc pro tunc order, it is not. As noted above, a nunc pro tunc order " 'may not be used to order that which was *not* actually done.' " *Pirtle,* 956 S.W.2d at 240 (quoting *Nelson,* 438 at 253). There is no indication, here, that the trial court ever intended to attach Husband's Exhibit 9 to divide the parties' marital personal property in the October 10 judgment. The October 10 judgment only mentions an "attached description or itemization" and an "attached exhibit," but does not clarify which description, itemization, or exhibit it intended to attach. There is also no indication in the record that Exhibit 9 even existed at the time the October 10 judgement was entered. Exhibit 9 was never referred to or identified, nor offered or received into evidence at trial. Thus, in rendering the October 10 judgment, the trial court could not have intended to attach Husband's Exhibit 9 to the judgment because that exhibit was not before the trial court. In fact, Wife argues on appeal that this exhibit "made its first appearance" in Husband's motion for an order nunc pro tunc, and her assertion is supported by the record. Because there is no indication in the record or the October 10 judgment that the trial court intended to attach Husband's Exhibit 9 to its judgment, the attachment of that exhibit " 'enter[s] a judgment never made or one different from that actually rendered.' " *Henderson,* 68 S.W.3d at 465 (quoting

*Coon,* 46 S.W.3d at 88). As such, the February 1 amendment is not a proper nunc pro tunc order. *See Pirtle,* 956 S.W.2d at 242.

■■■ Since the February 1 amendment was not a proper nunc pro tunc, ordinarily this court would find the nunc pro tunc judgment void and the prior final judgment would control. In this case, however, there was no prior final judgment. The October 10 judgment purports to divide the parties' marital personal property "[p]er attached description or itemization." No itemization or description is attached to the judgment, so the judgment does not divide the martial personal property between Husband and Wife. A judgment that does not actually divide or distribute all of the parties' marital property is not a final judgment because "[u]nless and until *all* marital property has been distributed, the trial court's judgment is not final." *Crawford v. Crawford,* 31 S.W.3d 451, 453 (Mo.App.2000).

■■■ As the October 10 judgment was not a final judgment, the trial court retained jurisdiction over the case even though Wife filed a notice of appeal from the October 10 judgment. As previously noted, the filing of a notice of appeal usually divests the trial court of jurisdiction. *State ex rel. Stickelber,* 54 S.W.3d at 223. Since the October 10 judgment was not a final judgment, however, Wife's filing of her notice of appeal from that judgment on November 9, 2001, was premature. Rule 81.05(b); *Stipp v. Meadows,* 978 S.W.2d 51, 55 (Mo.App.1998). Where the appeal is premature because it is from a non-final, and, thus, nonappealable, judgment, the trial court retains jurisdiction over the case. *Kilmer v. Browning,* 806 S.W.2d 75, 85 (Mo.App.1991). Until a final judgment is rendered, jurisdiction remains in the trial court, despite the filing of a notice of

appeal. *Id.* It is only after a final judgment is entered that "jurisdiction vests in the appellate court to decide the substantive issues of the appeal[.]" *Id.* at 86. The premature notice of appeal "shall be considered as filed immediately after the time the judgment becomes final for the purposes of appeal." Rule 81.05(b).

The concept that the trial court retains jurisdiction when a party files an appeal prematurely is in conflict with a prior opinion of this court which held that the trial court's jurisdiction is suspended while an appeal is pending, regardless of whether a party appealed from a nonappealable order. *Davidson v. Ellison*, 681 S.W.2d 479, 481–82 (Mo.App.1984). In reaching this decision, however, this court relied on the general rule for appeals from *final and appealable judgments*, i.e., that "the filing of an effective notice of appeal cuts off the trial court's jurisdiction to exercise any judicial function in the case and vests the jurisdiction in the appellate court." *Id.* (citing *Love v. First Crown Fin. Corp.*, 662 S.W.2d 283, 285 (Mo.App.1983) (dealing with the trial court's jurisdiction over a final judgment while an appeal is pending); *State ex rel. Steinmeyer v. Coburn*, 671 S.W.2d 366, 371–72 (Mo.App.1984) (detailing general law regarding when a trial court loses jurisdiction over a final judgment)). In addition, in reaching this decision, the court also relied on Rule 81.06, which was repealed on January 1, 1988. *Id.* at 481. Because the law recognized by the court in *Kilmer* is consistent with the Supreme Court rules and the concepts the court in *Davidson* relied on are not applicable to an appeal from a non-final judgment, *Davidson* should not be followed.[2]

Since Wife's filing of her notice of appeal was premature and did not divest the trial court of jurisdiction over the dis-solution action, the trial court retained the power to amend its October 10 judgment. *State ex rel. Schweitzer v. Greene*, 438 S.W.2d 229, 232 (Mo. banc 1969). In *State ex rel. Schweitzer*, the Supreme Court held that

> Logic and justice would seem to indicate that a trial court should be permitted to retain control of every phase of a case so that it may correct errors, or, in its discretion, modify or set aside orders or judgments until its jurisdiction is extinguished by the judgment becoming final and appealable.

*Id.* While the trial court has the power to amend, modify, or correct its orders before they become final and appealable, "any such action should be taken only after proper notice to the parties." *Id.* Here, the trial court amended its October 10 judgment by attaching Exhibit 9 to it on February 1. The court took this action in response to Husband's motion requesting that the trial court attach Exhibit 9 to the October 10 judgment, to which Wife filed suggestions in opposition. Thus, both Husband and Wife were aware of the possibility that the trial court might modify the October 10 judgment by attaching Exhibit 9 to it. In addition, both parties had an opportunity to present their arguments in support of or against the amendment at the hearing on Husband's motion. Although the trial court mislabeled the February 1 amendment a nunc pro tunc order, because it still had jurisdiction over the case and it ruled after notice and a hearing, this error was harmless. *See Coon*, 46 S.W.3d at 88. The February 1 amendment was a proper amendment to the October 10 judgment, and, since Exhibit 9 endeavored to fully divide the parties' marital property, the February 1 judgment is a final and appealable judgment.

2. Approved by the court en banc.

As previously noted, Wife's November 9, 2001, notice of appeal was premature. However, under Rule 81.05(b), "[i]n any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purposes of appeal." *See also L.J.B. v. L.W.B.*, 908 S.W.2d 349, 350 (Mo. banc 1995). The judgment here became final and appealable thirty days after February 1, the date the trial court added Exhibit 9 to the October 10 judgment to divide and distribute the parties' personal property. *See* Rule 81.05(a) (providing that a judgment becomes final thirty days after it is entered if no timely after-trial motion is filed). As such, Wife's first appeal will be considered timely filed. In addition, Wife filed a timely notice of appeal from the trial court's February 1 judgment. This court has jurisdiction over both of Wife's appeals.

## No Error in Dividing or Valuing West Maple Proceeds

In her first point on appeal, Wife claims that the trial court erred in dividing and valuing the proceeds from the sale of the parties' marital property at 411 West Maple. Specifically, Wife contends this award is erroneous because the trial court improperly awarded Husband all of the proceeds from the sale as a credit for his nonmarital contribution to the acquisition of the property. Further, she argues that this award was erroneous because the evidence did not support the trial court's valuation of the proceeds.

▉▉▉▉▉ The trial court has broad discretion in distributing marital property.

*Henning v. Henning*, 72 S.W.3d 241, 245 (Mo.App.2002). In dividing marital property, the court must consider all relevant factors, including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective[;]

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

Section 452.330.1, RSMo 2000.[3] This court will not disturb the trial court's property award absent an abuse of discretion. *Henning*, 72 S.W.3d at 245. The trial court abuses its discretion only if the "ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Wright v. Wright*, 1 S.W.3d 52, 57 (Mo.App.1999). " 'If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion.' " *Id.* (quoting *Collins v. Collins*, 875 S.W.2d 643, 647 (Mo.App.1994)).

In its judgment, the trial court divided the parties' property "after considering all relevant factors," including: (1) the parties' economic circumstances; (2) Husband's contribution to the marriage as a homemaker;[4] (3) the value of the parties' non-marital property; and (4) the parties'

---

3. All statutory references are to the Revised Statutes of Missouri 2000.

4. Although there is no evidence in the record to support the trial court's finding that Hus-

band contributed to the marriage as a homemaker, neither party challenges this finding on appeal.

conduct during the marriage. The trial court also took into account Husband's "substantial" non-marital contributions to the "parties' acquisition of marital assets" and Wife's disposal of marital property and Husband's non-marital property. With regard to the West Maple proceeds, the trial court found that they were marital property and awarded all of the proceeds to Husband to "credit" him for his non-marital contribution of $260,000 "to the acquisition of the marital real estate."

■ Wife claims that the trial court erred in making this award for two reasons. First, she asserts the trial court erred in dividing the proceeds. Wife argues that the trial court erred in awarding all of the proceeds to Husband to credit him for his non-marital contribution. Wife contends that this division is erroneous because Husband did not establish his non-marital contribution by clear and convincing evidence. The "clear and convincing" evidence standard applies when a party is trying to prove through, for example, the source of funds rule or the transmutation rule, that a piece of property should be *classified* as non-marital under section 452.330. *Klockow v. Klockow*, 979 S.W.2d 482, 488 (Mo.App.1998). Yet, "[o]nce the trial court determines property is marital in character, the court's *division* of that property is not subject to either the source of funds rule or the transmutation rule." *Lance v. Lance*, 979 S.W.2d 245, 248 (Mo. App.1998) (emphasis added).

■ Therefore, the clear and convincing evidence standard would not apply here because the issue is not the classification of the West Maple proceeds, but instead the division of those proceeds. Thus, the standard is not whether Husband proved his non-marital contribution to the acquisition of the West Maple property through clear and convincing evidence. Instead, under the applicable stan-dard in *Murphy v. Carron*, there only needs to be substantial evidence in the record from which the trial court could have found that Husband contributed non-marital assets to the acquisition of the West Maple property. *Murphy v. Carron*, 536 S.W.2d at 32.

■ At trial, Husband testified that during the marriage he sold two pieces of non-marital property and put the proceeds from those sales into the acquisition of the West Maple property. In addition, Husband presented two exhibits tracing his non-marital contributions to the acquisition of this marital property. These exhibits included check registers showing deposits and payment amounts, other bank account records, and receipts from the sale of his non-marital property. Although these are not the cleanest of records, since the source of funds rule does not apply, *Lance*, 979 S.W.2d at 248, these records, along with Husband's testimony, are sufficient to support the trial court's finding that Husband contributed non-marital property to the purchase of the West Maple property.

■ Wife also claims that the trial court erred in dividing the West Maple proceeds because it awarded all of the proceeds to Husband as a "credit." She states that "[r]ather than treating [Husband]'s alleged contribution as a factor to be weighed in the overall distribution of property, the trial court compensated [Husband] by awarding the entire proceeds to him," which "is a misapplication of the factors of [section] 452.330." As noted previously, however, one of the factors the trial court may consider in dividing the marital property is a party's contribution to the acquisition of marital property. Section 452.330.1(2). This includes contributions from premarital property. *See Myers v. Myers*, 47 S.W.3d 403, 407 (Mo. App.2001). Under section 452.330, the tri-

al court may "consider each party's 'contribution' in acquiring the parties' marital property in its division of the same and in doing so, in effect, trace[ ] the source of its acquisition, much as would be done in classifying property under the 'source of funds' rule." *Keller v. Keller,* 18 S.W.3d 589, 600 (Mo.App.2000). Moreover, "the trial court is permitted to attach any amount of weight it deems appropriate to the individual factors." *Crews v. Crews,* 949 S.W.2d 659, 665 (Mo.App.1997). Thus, the trial court did not err in finding that Husband's non-marital contribution was a significant factor to be weighed in Husband's favor in the division of property.

▮ Nevertheless, the trial court cannot consider one factor to the exclusion of all the other factors. *Keller,* 18 S.W.3d at 600. In this case, the trial court specifically stated at the beginning of its judgment that it considered "all relevant factors" in dividing the parties property. Although the trial court mentioned Husband's non-marital contribution in dividing the West Maple proceeds, Wife has not shown that the trial court considered this factor to the exclusion of all of the other relevant factors or that the other factors weighed in favor of a different distribution. "The division of marital property by the trial court 'is presumed correct and appellant bears the burden of overcoming this presumption.'" *Myers,* 47 S.W.3d at 408 (quoting *In re Marriage of Petersen,* 22 S.W.3d 760, 763 (Mo.App.2000)). Since there was evidence to support this factor weighing in Husband's favor and the trial court stated that it considered "all relevant factors in dividing" the marital property, this court cannot say that the trial court abused its discretion in awarding Husband all of the West Maple proceeds.

▮ Second, Wife argues that the trial court erred in valuing the West Maple proceeds because the evidence does not support the trial court's valuation. Although a trial court has broad discretion in valuing marital property, it "is prohibited from entering a valuation of marital property not supported by the evidence at trial[.]" *Farley v. Farley,* 51 S.W.3d 159, 164 (Mo.App.2001). In its judgment, the trial court valued the West Maple proceeds at $194,785.66, which is the sum of $114,785.66 in cash plus an $80,000 carry-back note. Later in its judgment, the trial court valued the proceeds at $194,641.81, which is the sum $114,641.81 in cash plus an $80,000 carry-back note. Wife claims that this award is not supported by the evidence because the parties stipulated that the West Maple proceeds consisted of $114,578.43 in cash and a carry-back note with a value of $116,474.48, "if run out through the full term" and "with the calculated interest."

▮ Contrary to Wife's argument, however, the trial court did not err in valuing the proceeds. It is true that the evidence shows that the cash proceeds from the sale of the West Maple property were $114,578.43 and the trial court valued them at $114,785.66 or $114,641.81. This error, however, is de minimis because the trial court's valuation of the cash proceeds is different from the value provided by the evidence by only about $200. If, in determining the value of property, the trial court's valuation is within the range of evidence, the valuation is not erroneous. *Creech v. Creech,* 992 S.W.2d 226, 230 (Mo. App.1999).

▮ In addition, the trial court did not err in valuing the carry-back note at $80,000. The parties' stipulated value of the carry-back note, $116,474.48, was based on the assumption that the carry-back note would run its full period with an interest rate at 8%. As such, the parties' stipulated value of the carry-back note was

its future value and not its value at the date of trial. The trial court, however, is obligated to value marital property at the date of trial. *Taylor v. Taylor,* 736 S.W.2d 388, 391 (Mo. banc 1987). Therefore, as the only evidence regarding the value of the carry-back note, at the time of trial, was its face value of $80,000, the trial court did not err in valuing it at $80,000. *See Smith v. Smith,* 985 S.W.2d 836, 842 (Mo. App.1998) (holding trial court erred in using values of marital property stipulated to by parties because the values could have changed significantly from the time the parties entered into the stipulation and the time of trial, 2 years later).

### No Error in Ordering Sale and Valuing, but Error in Dividing Blairstown Farm

In her second point, Wife asserts that the trial court erred in ordering the sale of, dividing the proceeds of, and valuing Blairstown Farm. As previously noted, the trial court has broad discretion in distributing marital property, *Henning,* 72 S.W.3d at 245, and valuing marital property, *Farley,* 51 S.W.3d at 164. This court will not disturb the trial court's property award absent an abuse of discretion. *Henning,* 72 S.W.3d at 245.

Wife first argues that the trial court erred in ordering the sale of Blairstown Farm. Wife, however, in her proposed distribution of marital property requested that the trial court value Blairstown Farm at $240,000 and divide that amount equally between Wife and Husband (i.e., $120,000 to Husband and $120,000 to Wife). The only way the trial court could have accomplished Wife's requested division was to *sell* Blairstown Farm and divide the proceeds equally between the parties. As such, Wife cannot now complain about the trial court ordering the sale of Blairstown Farm because

she, in effect, requested that the property be sold. "It is fundamental the wife cannot establish error because the trial court followed a procedure she proposed." *Reeves v. Reeves,* 768 S.W.2d 649, 652 (Mo.App.1989).

Wife next claims that the trial court erred in dividing the proceeds from the sale of Blairstown Farm. In its judgment, the trial court provided three different methods for distributing the proceeds of Blairstown Farm. First, the trial court, after crediting Husband and Wife for their non-marital contributions to the acquisition Blairstown Farm, ordered that the proceeds be divided equally between them. Later in its judgment, however, the trial court ordered the parties to split the proceeds equally after payment of credit for rents and expenses of sale. The trial court also ordered that Wife's share be reduced to satisfy the judgments awarded to Husband against Wife for the value of marital household goods that Wife sold, the value of Husband's non-marital property sold by Wife, and Husband's non-martial contribution to the acquisition of Blairstown Farm. The trial court did not award Wife any credit for her non-marital contribution to the purchase of Blairstown Farm. In Exhibit 9, the trial court awarded all interest in Blairstown Farm to Husband. Since the judgment provides three different methods for dividing Blairstown Farm, it is uncertain as to who is to receive the property or the proceeds from its sale. Thus, this division is unenforceable. "Generally, a judgment must be definite and certain to be enforceable." *DeCapo v. DeCapo,* 915 S.W.2d 343, 347 (Mo.App.1996). Accordingly, this court remands this issue to the trial court for it to enter a proper decree dividing Blairstown Farm. *In re Marriage of Dusing,* 654 S.W.2d 938, 945 (Mo.App.1983).

Wife also argues that the trial court erred in valuing Blairstown Farm at $300,000 because the evidence does not support this valuation. At the beginning of the trial, the parties stipulated that the value of Blairstown Farm was $270,000. Later in the proceedings, however, the parties indicated that they had stipulated to the values of the property as listed in Petitioner's Exhibit 7. Petitioner's Exhibit 7 provides that the fair market value of Blairstown Farm was $300,000. Thus, there was evidence in the record from which the trial court could have valued Blairstown Farm at $300,000. *Farley,* 51 S.W.3d at 164. In any event, since the trial court ordered Blairstown Farm to be sold, the value it placed on Blairstown Farm is not crucial to the division of property, as its value is dependent on how much a buyer is willing to pay for it. Nevertheless, since this court is remanding this issue for other reasons, the trial court is also free to reconsider the issue of the value of Blairstown Farm. *Miles v. Werle,* 977 S.W.2d 297, 304 (Mo.App.1998).

### Error in Award of Marital Household Goods to Wife

In her fourth point, Wife contends that the trial court erred "in failing to list or describe the household goods the court indicated were awarded to [Wife] 'per attached list or itemization' which the court valued at $89,642.00." Wife argues that the failure to attach this list is erroneous because without it "the judgment with respect to the division of household goods is not sufficiently certain in its terms to be enforceable[.]" Wife further asserts that the attachment of Exhibit 9, which she admits specifically divides the parties' household goods, is ineffective because its is not a proper nunc pro tunc order. Contrary to Wife's claim, however, this court has already determined that the trial court had jurisdiction to amend its judgment on

February 1. Since the trial court, through its February 1 amendment, attached to its judgment Exhibit 9, which specifically divides the parties' marital household goods, the trial court's award of marital household goods is sufficiently certain as to be enforceable.

Nonetheless, a portion of the award of marital property to Wife is erroneous. While Exhibit 9 gives Wife 100% of the Martin D28 guitar, under the "Lawsuits and Claims" portion of the judgment, the trial court awarded 1/2 of the value of the guitar to Wife and 1/2 to Husband. As the trial court provided two different methods for dividing the guitar, the division is uncertain and unenforceable. *See DeCapo,* 915 S.W.2d at 347. Therefore, this court remands this issue for the trial court to enter a proper decree dividing the Martin D28 guitar. *See Dusing,* 654 S.W.2d at 945.

### Error in Award of Marital Household Goods to Husband

In her fifth point, Wife argues that the trial court erred in its award of marital household goods to Husband. In its judgment, the trial court awarded Husband: "*HOUSEHOLD GOODS.* Per attached description or itemization, personal property having a value of $75,631.00, and judgment against [Wife] in the sum of $75,631.00 less credit for items of such personal property awarded to [Husband] that [Wife] returns to [Husband] as herein ordered by the Court." Wife contends that this award is "fatally flawed because it is conditional in that the amount of the judgment is dependent upon whether [Wife] returns certain items of property to [Husband]."

While this award initially appears ambiguous, from reading it in context, it appears that the intention of the

trial court was not to award Husband both the property and a money judgment against Wife. Instead, the trial court's intention was to award the property to Husband, but if the property is not delivered to him within 10 days, then Husband is to receive the judgment for the value of the property. As such, the trial court's award is conditional because it is dependent upon whether Wife, in the future, returns items of marital personal property to Husband. In addition, this award requires a hearing before the judgment could be executed. " 'A conditional judgment ... is one whose enforcement is dependent upon the performance of future acts by a litigant and which is to be annulled if default occurs[.]' " *Shaw v. Shaw*, 951 S.W.2d 746, 750 (Mo.App.1997) (quoting *Burch v. Burch*, 805 S.W.2d 341, 343 (Mo.App. 1991)). A conditional judgment is unenforceable. *Id.* "Generally, where the enforcement of a judgment is conditional upon the occurrence or non-occurrence of future acts, the performance or nonperformance of which is dehors the record, the judgment is deemed indefinite and unenforceable." *Burch*, 805 S.W.2d at 343. "Unless a judgment is susceptible of enforcement without requiring resort to external proof, it is void." *Id.* Therefore, the award is unenforceable and is reversed and remanded with directions for the trial court to enter an unconditional judgment regarding the distribution of marital household goods to Husband.

■■■■ Although this court is reversing and remanding the trial court's award of marital household goods to Husband, this court needs to address another of Wife's allegations of error regarding this distribution as it is likely to be significant on remand. This allegation is that the trial court erred in making this award because it, in effect, ordered Wife to reimburse Husband for the items of marital property that she sold. Wife claims this reimbursement is erroneous because there was no showing that Wife squandered marital assets. "The trial court may order reimbursement if it determines that a party has squandered marital funds." *Lawrence v. Lawrence*, 938 S.W.2d 333, 338 (Mo.App.1997). "The party alleging that another party squandered property must present evidence of it or no finding of squandering or reimbursement will result." *Id.*

In contrast to Wife's claim, the evidence showed, and Wife "candidly admitted," that, after the parties separated, Wife sold a number of the parties' marital household goods. In fact, Wife testified that she sold all of parties' marital "furniture and everything," and had nothing left to sell. Moreover, the evidence also revealed that Wife squandered marital assets in her method of disposing of them. There was no evidence that she tried to obtain the fair market value of the assets when she sold them. Instead, the evidence was that Wife sold the items at garage sales, sold several items to the Swap and Shop, and sold all the marital assets located in the garage to two men for a set price[5] without ever determining the value of the property. The evidence also revealed that Wife often did not know the price at which she sold an item. Further, there was evidence that Wife simply gave away marital property to her boyfriend and her daughter.

5. The amount for which these two men purchased the items in the garage is unclear. Wife first testified that they purchased the items for $5,000, but later testified that they kept lowering the purchase price. She also testified that "[t]hey pretty much cleared up the garage" and "they took more than they paid for," but she did not try to have the items returned to her.

Although Wife stated that she used the money from the sale of the marital property to pay her attorneys' fees incurred in the dissolution action, "the trial court enjoys broad discretion in making determinations on issues relating to the squandering of assets, because it is in the better position to judge credibility." *Heslop v. Heslop*, 967 S.W.2d 249, 255 (Mo. App.1998). The trial court is not required to believe, and it is obvious from the judgment that it did not believe, that Wife spent all of the money she made from selling the parties' marital assets on her attorney's fees or that she even sold all of the assets rather than giving or secreting them away. *Id.* Thus, viewing the evidence in the light most favorable to the judgment and deferring to the trial court's credibility determinations, there was sufficient evidence from which the trial court could have found Wife squandered marital assets so that Husband was entitled to reimbursement.

### Error in Award of Non–Marital Property to Husband

In her sixth point, Wife claims that the trial court erred in awarding Husband "judgment against [Wife] for the non-marital property of [Husband] sold by [Wife] in the sum of $25,531 less credit for items of such personal property awarded to [Husband] that [Wife] returns to [Husband] as herein ordered by the Court." Specifically, Wife asserts the trial court erred in making this award because "[t]he trial court made no finding as to the specific non-marital property it found was sold by [her], nor is there any listing included within the Judgment or attached thereto which describes the specific non-marital property that is to be returned to [Husband]." Thus, she states that the judgment is "so completely lacking in specificity as to be unenforceable."

Contrary to Wife's claim, however, the trial court's award is not "so completely lacking in specificity as to be unenforceable" because the trial court attached a list identifying the non-marital property awarded to Husband in its February 1 judgment. Nevertheless, this award is unenforceable because, like the award of martial household goods, it is conditional. As this court has previously noted, " '[a] conditional judgment ... is one whose enforcement is dependent upon the performance of future acts by a litigant and which is to be annulled if default occurs[.]' " *Shaw*, 951 S.W.2d at 750 (quoting *Burch*, 805 S.W.2d at 343). The trial court's award is conditional because it is dependent upon whether Wife, in the future, returns items of non-marital personal property to Husband, and it requires a hearing before it could be executed. Since this award is conditional, it is unenforceable. *Burch*, 805 S.W.2d at 343. Thus, the award is reversed and remanded with directions for the trial court to enter an unconditional judgment regarding the distribution of non-marital personal property to Husband.

### Husband Has No Right to Pursue Claims for Breach of Settlement Agreement

In her seventh point, Wife contends that the trial court erred in awarding Husband the right to pursue and recover on any claim he may have against Wife for her breach of the memorandum of settlement agreement. Wife claims this award is erroneous because it is *res judicata* and violates the prohibition against splitting causes of action in that the settlement agreement had already been found to be unenforceable.

On October 26, 2000, prior to trial, Husband and Wife signed a memorandum of settlement agreement. On November 13,

2000, Husband moved to enforce the settlement agreement. In response to his motion, Wife filed suggestions in opposition to Husband's motion to enforce. She alleged that the settlement agreement should not be enforced because "[a]fter reflection," she did not believe the agreement "fairly and equitably" divided the parties' marital property and was "onerous and unjust in the division of property and assets." On January 24, 2001, after a hearing on the settlement agreement,[6] Commissioner Sherrill Rosen overruled Husband's motion to enforce the settlement agreement. At trial, Husband raised the issue of the settlement agreement, indicating that he believed it was relevant as to what Wife thought was a reasonable division of property, even though the agreement was not legally enforceable. The trial court ruled that testimony about the settlement agreement as admissible for the purpose of showing the witness's credibility, but remarked that the prior commissioner assigned to the case found the settlement agreement "unenforceable." In its judgment, however, the trial court granted Husband "the right to pursue and recover on any claim [he] may have against [Wife] for breach of the Memorandum of Settlement Agreement."

 The trial court's award to Husband of the right to pursue any claim he may have against Wife for breach of the settlement agreement is erroneous. Separation agreements are permitted under section 452.325. Section 452.325.1 provides:

> To promote the amicable settlement of disputes between the parties to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a written separation agreement containing provisions for

the maintenance of either of them, the disposition of any property owned by either of them, and the custody, support and visitation of their children.

The terms of a separation agreement relating to maintenance and disposition of property are binding on a trial court in a dissolution proceeding, unless the court "finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable." Section 452.325.2. The requirement that the trial court review a separation agreement and approve it as conscionable before enforcing it makes a separation agreement "unique":

> "A separation agreement is unique in that the trial court must review it and, considering the parties' economic circumstances and any other relevant factors, find it conscionable before it takes effect. § 452.325.2. There are thus actually three parties who must approve of its terms before it may be enforced. In this respect a separation agreement under § 452.325.1 differs from a settlement agreement in a typical civil suit. The statute specifically asserts that the purpose of such agreements is '[t]o promote the amicable settlement of disputes between the parties to a marriage.' § 452.325.1. Given the stated purpose of separation agreements and the fact that to some extent they are three-party agreements, we find that the legislature intended that the husband and wife jointly, while in agreement, come before the court and present their proposed settlement for the court's approval. Either one or both of the parties may offer

---

**6.** Neither the memorandum of settlement agreement nor transcripts of the hearing on the settlement agreement were included in the record on appeal.

the existing agreement when presented."

*In re Marriage of Brinell,* 869 S.W.2d 887, 888 (Mo.App.1994) (quoting *O'Neal v. O'Neal,* 673 S.W.2d 126, 127–28 (Mo.App. 1984)). Therefore, "a condition precedent to the court's consideration of a separation agreement is that the parties be 'presently in agreement' at the time the agreement is submitted to the court." *Wakili v. Wakili,* 918 S.W.2d 332, 339 (Mo.App.1996). If the parties are not in agreement at the time the separation agreement is presented to the court, the trial court cannot approve it, and, thus, the separation agreement was never enforceable. *See O'Neal,* 673 S.W.2d at 128 (reversing the trial court's enforcement of a separation agreement when the parties did not agree to it).

▮ Here, Husband and Wife signed a memorandum of settlement agreement on October 26, 2000. Husband then filed a motion asking the trial court to enforce the agreement. This was the first time the agreement was presented to the court. Wife opposed the motion. As such, the parties were not in agreement at the time the settlement agreement was presented to the court, so the agreement was never enforceable. *Wakili,* 918 S.W.2d at 339. Since the agreement was never enforceable, Husband does not have any right to pursue a claim against Wife for breach of the agreement. Although a party can sue another party for breach of a settlement agreement, in order to state a cause of action for breach, the party must show the "existence of a valid and enforceable contract between the parties." *In re Marriage of Gibson,* 77 S.W.3d 641, 644 (Mo. App.2002). As the settlement agreement was never enforceable, the trial court could not grant Husband the right to pursue any claims he may have against Wife for her breach of the unenforceable agreement. Accordingly, this award is reversed.

## Entire Division of Marital Property Will Not Be Reviewed

In her eighth point, Wife argues that the trial court erred in its entire division of the parties' marital property. In light of this court's decision to reverse and remand various portions of the trial court's division of marital and non-marital property, which will most likely cause the trial court to reexamine its entire division of the parties' marital property, this court will not address this point.

## No Error in Awarding Claim against William Randall Estate to Husband

▮ In her ninth point, Wife contends that the trial court erred in awarding Husband the entire claim against the William Randall Estate, which the court determined was marital property. Specifically, Wife asserts that this award is erroneous because "[t]here was no evidence before the court upon which the value of the ultimate claim against the estate of Mr. Randall could be determined," so the trial court should have divided the proceeds from the claim equally between the parties.

▮ " 'Although the trial court need no longer assign values to the marital property, evidence from which the value of the marital property can be determined must appear.' " *Spauldin v. Spauldin,* 945 S.W.2d 665, 669 (Mo.App.1997) (quoting *Frame v. Frame,* 696 S.W.2d 332, 336 (Mo. App.1985)). In addition, "[e]vidence permitting a fair and accurate valuation of the [marital property] is required before a just division of the property can be achieved[.]" *Id.*

Here, the trial court found that the claim against the William Randall Estate was marital property. The trial court then awarded Husband the exclusive right to

pursue and recover on this claim. The trial court did not assign a value to this claim; however, contrary to Wife's assertion, there was evidence in the record from which its value can be determined. At trial, Wife introduced into evidence the written claim filed against the William Randall Estate. This document shows that the value of the claim is $10,580.03. Neither party disputed the face value of the claim at trial. While this claim is unliquidated, it is unlikely that Husband will receive more than $10,580.03 on the claim, since that is the amount the parties requested, and, if he receives less, Wife is not prejudiced. Thus, the trial court did not err in awarding the entire claim against the William Randall Estate to Husband because there was, in fact, evidence in the record to determine its ultimate value.

### Error in Ordering Name Change

In her tenth point, Wife asserts that the trial court erred in ordering that her last name be changed from "Reynolds" to "Pemberton," her maiden name. She argues that although she originally requested the name change in her dissolution petition, the ordered change was erroneous because she withdrew this request at trial without objection from Husband.

■■■■ "The common law and statutory right to change one's name belongs to the individual whose name is being changed." *In re the Marriage of Hayes,* 12 S.W.3d 767, 769 (Mo.App.2000). Section 527.270 and Rule 95.01 provide only for the person desiring to change his or her name to request to the court that it be changed.[7] This court must affirm the trial court's judgment in a name-change case unless it is not supported by substantial

evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *B.L.W. by Ellen K. v. Wollweber,* 823 S.W.2d 119, 122 (Mo.App.1992).

■■■■ In her petition, Wife requested that her maiden name of "Pemberton" be restored to her. "Pleadings are not self-proving," however. *McCandless–Glimcher v. Glimcher,* 73 S.W.3d 68, 81 (Mo.App. 2002) (quoting *Schindler v. McCluskey,* 58 S.W.3d 48, 50 (Mo.App.2001)). As such, Wife must have introduced evidence at trial to support her request for the name change. *Id.* She did not do so, and, instead, testified that she was withdrawing her request. Wife testified, "I'll maintain Reynolds." Thus, the only evidence at trial regarding the name change was that Wife did *not* want her last name changed from Reynolds to her maiden name Pemberton. As there was no evidence supporting Wife's request for a name change, but instead there was evidence that Wife did not want her name to be changed, the trial court erred in ordering her name changed. *B.L.W.,* 823 S.W.2d at 122. Accordingly, the portion of the judgment changing Wife's name from "Reynolds" to "Pemberton" is reversed.

■■■■ Because this court is reversing portions of the property division and remanding for reconsideration by the trial court, this court finds, in addition to the errors raised by Wife on appeal, that the trial court erred in awarding to Wife the right to pursue any claim she may have against Husband for the possession or disposition of her diamond ring. *See* Rule 84.13(c). This award is erroneous because it is contrary to the requirement that "except in the most unusual case, a complete division of marital property should be

---

**7.** "The limited exception is a petition to change the name of a minor child brought by the child's parent in a dissolution proceed-

ing." *Hayes,* 12 S.W.3d at 769. *See also Neal v. Neal,* 941 S.W.2d 501, 503 (Mo. banc 1997).

achieved in the dissolution decree." *In re Marriage of Farquhar,* 719 S.W.2d 456, 458 (Mo.App.1986). Deferring resolution of disputes between the parties over marital property to some future lawsuit fails to completely divide the marital estate. Accordingly, the award is reversed and remanded for the trial court to divide this item of marital property. It is also noted that the provision in the judgment giving each party the right to pursue any claim against the other for possession or disposition of the Martin D28 guitar, which was reversed due to the conflicting provisions dividing the guitar, was similarly improper.

The judgment of the trial court is affirmed in part, and reversed in part and remanded.

All concur.